**Lorraine DUBOIS, individually and as mother and next friend of her minor child, Plaintiff-Appellant,**

v.

**CONNECTICUT STATE BOARD OF EDUCATION, Town of Weston Board of Education, Joyce C. Driskell, Richard Winokur, and Joy K. Peshkin, Defendants-Appellees.**

**No. 228, Docket 83-7452.**

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1983.

Decided Jan. 25, 1984.

Weston Bd. of Educ., Richard Winokur, and Joy Peshkin.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Lorraine Dubois appeals from a judgment of the United States District Court for the District of Connecticut, Warren W. Eginton, *Judge,* dismissing her complaint for damages and declaratory relief for alleged violations of the Education for All Handicapped Children Act, 20 U.S.C. § 1400 *et seq.* (1982) (the "Act" or "EHA"), because Dubois had failed to exhaust her administrative remedies as required by the Act. On appeal, Dubois contends that the court erred in ruling that she had not exhausted her administrative remedies. Although we disagree with the reasoning advanced by Dubois, we agree with her conclusion that administrative remedies were exhausted. We therefore reverse the judgment and remand for decision on the merits.

## BACKGROUND

The present controversy centers on the liability under EHA of a school district for the payment of transportation costs in connection with the special placement of a student who may be entitled to such placement under EHA. The record in the district court reveals that for some period prior to October 1, 1977, the effective date of the Act, Dubois and defendant Town of Weston Board of Education (the "Board") were at odds as to the appropriate educational placement for her son Scott. Extensive disciplinary problems in the 1975–76 school year led to Scott's suspension from Weston Middle School; the suspension was later modified to permit "home-bound study with tutorial assistance." From 1976 to 1978, Scott attended St. Luke's, a nonspecial education private day school; there his disciplinary problems eased, but his academic performance declined and he was not invited to return. During Scott's final year at St. Luke's, the Act became effective, and

Ernest C. La Follette, Bridgeport, Conn., for plaintiff-appellant.

John R. Whelan, Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen. of the State of Conn., Bernard F. McGovern, Jr., Robert W. Garvey, Asst. Attys. Gen., Hartford, Conn.), for defendants-appellees Connecticut State Bd. of Educ. and Joyce C. Driskell.

Robert J. Murphy, Hartford, Conn., submitted for defendants-appellees Town of

in the spring of 1978, Dubois and the Board sought to arrange new educational placement for Scott for the 1978–79 school year. The Board's Planning and Placement Team ("PPT") recommended placing Scott in the Cooperative Educational Services Alternative Learning Center in Southport, Connecticut; Dubois proposed instead that Scott be sent to a school in Arizona. Before this disagreement was resolved, the Board sought to give Scott psychological testing, and sent Dubois a list of six psychologists from whom she might choose. Dubois rejected all six;[1] she suggested instead another psychologist who was rejected by the Board because he was not known to it.

Dubois sought review of the PPT's recommendation for placement, and a hearing was held by the Board in July 1978. In an August 8, 1978 decision, the Board determined that Scott was "not an exceptional child for whom special educational services are required" within the meaning of the pertinent statutes.[2] The decision noted that the testimony of Scott's parents, a May 1977 psychologist's report, and a letter from the Assistant Headmaster at St. Luke's "indicate[d] that Scott is not socially or emotionally maladjusted, that he no longer needs counseling and that he is no longer a discipline problem." The Board noted that

there were no current psychological evaluations. Thus, the Board concluded that Scott was not entitled to special placement and that he could return to regular public school in Weston.

Dubois appealed this decision to defendant Connecticut Department of Education ("Department"). Before a state administrative hearing could be held, however, the parties appear to have reached an informal agreement. After a meeting on October 20, 1978, Scott's parents and the Board agreed to a Board-funded placement at Karafin School in New York. The agreement was not reduced to writing, however, and although Scott shortly commenced to attend Karafin School, controversy arose as to the extent of the Board's agreement to fund Scott's placement. Dubois asserted that the Board had agreed to assume both educational and transportation expenses; the Board maintained that it had agreed only to pay educational expenses.

On December 22, 1978, the Board conducted an administrative review of the transportation question at Dubois's request. This review resulted in a Board decision (1) to reaffirm its own understanding of the October agreement and (2) to direct the PPT to conduct evaluative testing. Dubois

1. Dubois's letter stated that four of the six psychologists were "unavailable," although precisely what she meant by that term and her basis for that conclusion were not revealed.

2. EHA is an incentive grant program, under which a state may qualify for federal funds if it adopts a policy for the education of handicapped children that complies with the provisions of the federal law. The most important of these provisions are those requiring the state to "ha[ve] in effect a policy that assures all handicapped children the right to a free appropriate public education," 20 U.S.C. § 1412(1), and that the state comply with the Act's procedural safeguards, id. § 1412(5). Under 20 U.S.C. § 1401(1),

   [t]he term "handicapped children" means mentally retarded, hard of hearing, deaf, speech impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disabilities, who by reason thereof require special education and related services.

The requirements of the federal law are enforced by requiring participating states to submit an annual plan for compliance with the Act, which must be approved by the Commissioner of Education if the state is to receive federal funds. See 20 U.S.C. §§ 1412, 1413 (1982); 34 C.F.R. §§ 300.1–300.151 (1983) (detailing the federal standards). The Connecticut policy for the education of handicapped children is codified at Conn.Gen.Stat.Ann. §§ 10–76a–10–76s (West 1977 & supp. 1982). Sections 10–76a(c) & (e) set forth the criteria for classifying a child as one "requiring special education." Section 10–76h provides for the administrative review of complaints relating to the classification and placement of children under the Act. The administrative proceedings in this case were conducted pursuant to that section.

Under the federal statute, 20 U.S.C. § 1415 (1982), the state administrative hearing system must conform to federal procedural standards; the decisions of the state administrative authority are reviewable in either state or federal court. 20 U.S.C. § 1415(e)(2).

appealed this decision to the Department and refused to grant permission for testing.

In March 1979, defendant Joyce C. Driskell, a Department hearing officer, reasoning that the Board could not be ordered to provide transportation for Scott unless he were a handicapped child for whom the Board was required to provide special placement, ordered independent testing of Scott by psychologists and an educator. On each date thereafter set for evaluation, the Board sent a car to the Dubois home to transport Scott for testing; each time, however, Dubois refused to allow Scott to go to be tested. Eventually, Dubois indicated that she would agree to testing by one designated psychiatrist, Dr. Black; but she then insisted that Dr. Black not communicate with other evaluators as ordered by the hearing officer, and that he not communicate verbally with Weston school personnel. Dr. Black informed the hearing officer that he could not perform under those conditions and he was accordingly relieved of his duties. The result of these events was that no testing pursuant to the hearing officer's order was performed.

On March 30, 1979, the hearing officer entered an order concluding that there were insufficient data to substantiate Scott's current need for special placement, and calling for the parties to agree on testing. The hearing officer retained jurisdiction pending testing. Rather than agree on testing, Dubois immediately sought state court review of the hearing officer's decision. The state court dismissed her suit in 1980 for lack of jurisdiction because the hearing officer's decision was not final. Thereafter the administrative hearing was reconvened. None of the psychological or educational testing of Scott ordered by the hearing officer was ever performed.

On January 23, 1981, the hearing officer handed down her decision ("January 1981 Decision"). The decision included findings

(1) that a finding that Scott was a handicapped child was a necessary predicate for any ruling that the Board must provide transportation for Scott to attend Karafin School, (2) that none of the evaluations theretofore ordered by the hearing officer had been done, and (3) that "[n]o current evaluative data on S[cott] is on record." (*Id.* at 2.) The hearing officer concluded that "[i]n the absence of substantiating evaluative data, no finding for the presence of a handicapped condition requiring special education or related service can be made regarding S[cott]." (*Id.*) She ruled, therefore, that Scott was "not an exceptional child requiring special education or related services" within the meaning of the statutes (*id.*), and that "[t]he Board is not responsible for the costs of tuition or the related service of transportation of S[cott] to and from Karafin School" (*id.* at 3). Dubois's petition for rehearing was denied.

Dubois commenced the present action under the Act[3] in March 1981 seeking, *inter alia,* $1452.90 for the cost of transporting Scott to Karafin School; $25,000 for Dubois and $50,000 for Scott for their mental anguish and loss of income; and a total of $225,000 in punitive damages. Scott graduated from Karafin School in 1981, mooting any issue as to his future placement and leaving only the damages claims.

Defendants moved for summary judgment on the grounds, *inter alia,* that damages are not available under EHA, that the Department and Driskell are immune from an award of damages under the Eleventh Amendment to the Constitution, and that Dubois had failed to exhaust her administrative remedies. The United States Magistrate to whom the motion was referred recommended that it be granted on the exhaustion ground. The district court, after reviewing Dubois's objections to the Magistrate's recommendation stated that

---

**3.** Paragraphs 93 and 94 of the amended complaint also invoke 42 U.S.C. § 1985 (1976). Since, however, the complaint does not assert that the alleged conspiracy was formed "for the purpose of depriving" Dubois or Scott "of the equal protection of the laws, or of equal privi-

leges and immunities under the laws," 42 U.S.C. § 1985(3), it fails to state a claim upon which relief may be granted under § 1985. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

the administrative record was "incomplete," and dismissed the complaint for failure to exhaust administrative remedies. This appeal followed.

## DISCUSSION

Dubois contends principally that the administrative record before the district court was appropriately complete because the only issue before the hearing officer was the Board's obligation to pay Scott's transportation expenses, and evaluative data were irrelevant to that issue. Alternatively, she contends that the court improperly placed on her the burden of providing evaluative data. Although we disagree with Dubois's premises, we conclude that administrative remedies were exhausted and that the case should be decided on its merits.

A. *The Relevance of Contemporaneous Evaluative Data*

■ Congress adopted EHA to remedy the condition of "[m]ore than half of all handicapped children in the United States [who] are not receiving an education appropriate to their needs." H.R.Rep. No. 332, 94th Cong., 1st Sess. 7 (1975), *see Hendrick Hudson Board of Education v. Rowley,* 458 U.S. 176, 179–82, 102 S.Ct. 3034, 3037–38, 73 L.Ed.2d 690 (1982) (*"Rowley"*). The Act provides federal funding to state and local school systems for the purpose of special education, and conditions the grant of funds on the school system's compliance with federal standards. *See* note 2, *supra.*

If a school system is liable for the special placement of a student under the Act, it is also liable for the cost, if any, of transporting the student to and from the special placement. 20 U.S.C. § 1401(17) and (18) (1982). On the other hand, if a student does not fall within the Act's definition of "handicapped," the school is not liable for special placement and would not be liable for the cost of transporting the child to any special placement facility.

■ Before a school system becomes liable under the Act for special placement of a student, it is entitled to up-to-date evaluative data. *See Zvi D. v. Ambach,* 694

F.2d 904, 907 (2d Cir.1982) (no school system liability for unilateral placements by parents). Further, the school system may insist on evaluation by qualified professionals who are satisfactory to the school officials. *Vander Malle v. Ambach,* 673 F.2d 49, 53 (2d Cir.1982) (defendant school officials are "entitled to have [student] examined by a qualified psychiatrist of their choosing."). Since the school system's liability under the Act for the cost of transporting a student to a special placement depends on its liability for the special placement, current evaluative data must be obtained before the school system may be required to pay transportation costs.

■ These principles are not altered in the present case by the fact that the Weston Board *agreed* to pay the educational expenses of Scott at Karafin. If Scott was not handicapped within the meaning of the Act, the Board could not have been compelled to provide such funding and any attempt to compel it to fund related noneducational expenses must similarly fail.

In sum, we reject Dubois's contention that the hearing officer was not entitled to order the development of evaluative data on Scott in order to determine Dubois's claim for transportation expenses.

B. *The Import of the Absence of Evaluative Data*

The administrative record presented to the district court reflected that there was no psychological or educational testing of Scott after May 1977, and thus no relevant evaluation of Scott for the period for which Dubois seeks reimbursement of transportation costs. The district court termed the administrative record "incomplete" and concluded that Dubois had failed to exhaust her administrative remedies. While we might agree that Dubois had failed—because of the absence of evaluative data—to establish her right to reimbursement, we do not agree that the administrative remedies were not exhausted.

It is established that under normal circumstances a parent dissatisfied with a spe-

cial placement decision of a school system must pursue the administrative remedies provided by the Act before bringing a court action under the Act. Section 1415 of EHA requires participating states to observe certain procedures for classifying children as handicapped and giving parents or guardians an opportunity to present complaints to the local school system. 20 U.S.C. § 1415(b)(1)(E). After receipt of a complaint, the local system or the state must conduct a formal hearing, and "any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing." 20 U.S.C. § 1415(c). Section 1415(e)(2) provides that any party aggrieved by the result of the appeal to the state educational agency, or, if such an appeal is not required, by the result of the administrative hearing, may bring a civil action in state or federal court, and that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." In *Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981), we recognized that the state administrative procedures must be exhausted before an action under 20 U.S.C. § 1415(e) may be considered on the merits. *See Quackenbush v. Johnson City School District,* 716 F.2d 141, 146 (2d Cir.1983).

■ We agree with the district judge's assessment that the administrative record is "incomplete", in the sense that it lacks the data necessary to reach a finding that Scott was a handicapped child. The absence of the necessary data, however, does not mean that the proper administrative route was not followed by Dubois. Dubois took all of the procedural steps envisioned by the Act: she applied to the Board for transportation costs; when the Board refused to pay those costs, she requested an administrative review of the decision; when the Board reaffirmed its decision, she appealed to the Department; when the Department rejected her claim for those costs, she unsuccessfully petitioned for rehearing. The January 1981 decision by the Department's hearing officer was definitive and final. It ruled that the Board was not liable for Scott's transportation costs, and it left no further administrative steps for Dubois to take.[4] *See* 20 U.S.C. § 1415(e)(1); *Quackenbush v. Johnson City School District, supra,* 716 F.2d at 146. That the decision was based on the fact that the absence of crucial data made it impossible to rule in Dubois's favor goes to the merits of her claim, not to exhaustion.

We do not view this ruling as in any way disadvantaging the school system in an EHA case. If a final administrative decision has been rendered, it will be reviewed on its merits, and the teaching of *Rowley* is that due weight must be given to the administrative proceedings. 458 U.S. at 206, 102 S.Ct. at 3051. If, as appears here, the absence of any data that would have permitted a ruling that Scott was a handicapped child was not for lack of effort on the part of the defendants,[5] the defendants are entitled to have the Department's January 1981 decision upheld on its merits.[6]

## CONCLUSION

The judgment of the district court dismissing the complaint for lack of exhaus-

4. In contrast, in March 1979 when the hearing officer's order for testing was not followed, the hearing officer directed the parties to agree on testing and retained jurisdiction until tests were completed. At that stage, as the state court ruled, the Department's decision was not a final decision, and Dubois had not exhausted her administrative remedies.

5. The record contains ample support for the view that the absence of data was attributable solely to Dubois's intransigence in preventing testing. Indeed, despite Dubois's conclusory assertions that she did not deny permission for evaluation of Scott and did not refuse to cooperate, her brief on appeal virtually concedes that she prevented testing, by stating that she was merely insisting on a voice in the selection of the evaluators and on convenient scheduling. (Dubois brief on appeal at 13, 14–15.)

6. Defendants' motion for summary judgment raised several legal defenses other than exhaustion. These other grounds, which were not addressed by the magistrate or the district court, may be considered on remand.

tion of administrative remedies is reversed, and the cause is remanded for further proceedings. No costs.