**Kenneth GASTON, Plaintiff,**

v.

**Thomas COUGHLIN, III, Donald Selsky, Lt. Grant, Lt. LeBaron, Hans Walker, Frank Irvin, Edward Dann, and John Doe, Defendants.**

No. 91–CV–5788.

United States District Court,
W.D. New York.

Aug. 12, 1994.

Kenneth Gaston, pro se.

G. Oliver Koppell, Atty. Gen. for the State of N.Y., Andrew Lipkind, Asst. Atty. Gen., of Counsel, Buffalo, NY, for defendants.

DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

*JURISDICTION*

The parties executed a consent to proceed before the undersigned on December 12, 1991.

*BACKGROUND*

Plaintiff, Kenneth Gaston, filed a complaint against Defendants Coughlin, Selsky, Grant, and LeBaron alleging causes of action under 42 U.S.C. § 1983 on August 27, 1991.

Coughlin is the Commissioner of the Department of Correctional Services; Selsky is the Director of the Special Housing/Inmate Disciplinary Program; and, Grant and LeBaron were the hearing officers at the Attica Correctional Facility ("Attica") who conducted Plaintiff's hearings based on the issue in this action.

On January 22, 1992, Plaintiff filed an amended complaint with leave of the court, and no objection from Defendants. The amended complaint added as Defendants Hans Walker, the Superintendent of Auburn Correctional Facility ("Auburn"), Frank Irvin, currently the Superintendent of Wende Correctional Facility ("Wende"), but formerly the First Deputy Superintendent at Auburn at the time of the incident at issue in this case, Edward Dann, the Deputy Superintendent for Security at Auburn, and John Doe, a confidential informant, incarcerated at Auburn. Plaintiff has alleged causes of action under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 42 U.S.C. § 1986. Specifically, Plaintiff claims that he was deprived of due process and equal protection under the Fourteenth Amendment, and subjected to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff also alleges a conspiracy by Defendants to deprive him of his constitutional rights.

Following extensive discovery, on November 16, 1992, Plaintiff filed a motion for partial summary judgment as to the liability of Defendants LeBaron, Grant, and Selsky for their alleged failure to independently assess the reliability of the confidential informant.

On March 8, 1993, Defendants filed a motion for summary judgment to dismiss the amended complaint on the basis that no genuine issue of material fact remained, and that all Defendants were entitled to judgment as a matter of law.

For the reasons as set forth below, Plaintiff's motion for partial summary judgment is DENIED. Defendants' motion for summary judgment is GRANTED.

1. G. references are to the page number of the transcript of the deposition of Plaintiff, Kenneth

## FACTS

On May 19, 1990, a "food strike" occurred at the Auburn Correctional Facility. (G. 5).[1] Plaintiff, then incarcerated at Auburn, was, at that time, the Vice President of the Inmate Liaison Committee ("ILC"). (G. 6). Following the "food strike," Plaintiff was asked to attend a meeting between members of the ILC, Defendants Dann and Irvin, and Captain Dumas who is not a party to this lawsuit. (G. 6). During the meeting, Plaintiff told Irvin that he was unaware of the food strike as he had remained in his cell all day, and, as such, he was not aware of any reasons behind the strike. (G. 8–9). Irvin then directed Plaintiff and other ILC members to survey the inmate population to determine the reasons for the strike. (G. 11).

On May 21, 1990, during a meeting between Plaintiff, other ILC members, and a corrections sergeant, the results of the survey were disclosed. (G. 13). Shortly thereafter, Plaintiff claims that he, along with the ILC President, an inmate Jones, were confined to their cell, and then escorted to the Administration Building where they were strip-searched, handcuffed, and transported to Attica. (G. 14–16). Both Plaintiff and Jones were black; the other white and Hispanic members of the ILC were not transferred to Attica. (G. 17–18).

Upon his arrival at Attica, Plaintiff was taken to the Special Housing Unit ("SHU"), where he was again strip-searched, handcuffed, and then escorted to a cell. (G. 15). On May 23, 1990, Plaintiff was served with a misbehavior report charging that Plaintiff had led the inmate food strike. (G. 16). This report was based upon information received from a confidential inmate informant. (G. 16).

Utilizing an employee assistant, Plaintiff requested that a number of witnesses be contacted, that a copy of the videotape of the incident in the messhall at Auburn on May 19, 1990 be obtained, and that Plaintiff be provided with a copy of the confidential information. See Plaintiff's Amended Complaint, at p. 5, ¶ 26. The employee assistant in-

Gaston, dated October 29, 1992.

formed Plaintiff that one witness agreed to testify, but that his other requested witnesses were either transferred or not incarcerated at Auburn, and, therefore, unavailable to testify. Plaintiff's Amended Complaint, at p. 5, ¶ 27. Plaintiff's requests for the videotape and a copy of the confidential information were denied. Plaintiff's Amended Complaint, at p. 5–6, ¶¶ 28–29.

A hearing was held on May 25, 1990 where Defendant LeBaron presided as the Hearing Officer. Plaintiff's Amended Complaint, at p. 6, ¶ 30. LeBaron denied Plaintiff's requests for three inmate witnesses as not relevant, and denied, without explanation, Plaintiff's requests for Dann and Irvin to act as witnesses. Plaintiff's Amended Complaint, at p. 6, ¶ 32. LeBaron also denied Plaintiff's request to view the videotape, and held that the confidential information received from the informant could not be disclosed. Plaintiff's Amended Complaint, at p. 6, ¶¶ 33–34. Following the hearing, LeBaron imposed a penalty of 730 days confinement in the SHU. *See* Affidavit of Patricia Priestley, Attica Inmate Records Coordinator, Exhibit K. Plaintiff filed an administrative appeal with Defendant Selsky's office on June 7, 1990. Affidavit of Patricia Priestley, Exhibit L. Selsky reversed LeBaron's decision, and ordered that a new hearing be held. Affidavit of Patricia Priestley, Exhibits M–O.

A new employee assistant was assigned to Plaintiff to investigate the report. Plaintiff's Amended Complaint, at p. 7, ¶¶ 40–41. However, the assistant did not return to advise Plaintiff of her investigation results prior to the new hearing scheduled for August 24, 1990. Plaintiff's Amended Complaint, at p. 8, ¶ 41. Defendant Grant, the Hearing Officer at the new hearing, offered the investigation results to Plaintiff at the hearing, however, Plaintiff refused to accept the tendered results. Plaintiff's Amended Complaint, at p. 8, ¶ 44; Affidavit of Patricia Priestley, Exhibit W, Transcript of Second Hearing, at pp. 3–4. Grant then adjourned the hearing. Exhibit W, Transcript of Second Hearing, at p. 5. The investigation results were delivered to Plaintiff in his cell by the employee assistant a few days later, however, Plaintiff again

did not accept the results. Plaintiff's Amended Complaint, at pp. 8–9, ¶ 46.

When the hearing reconvened, Grant allowed testimony from two inmates, however he denied Plaintiff's request for testimony from a third inmate as irrelevant. Affidavit of Patricia Priestley, Exhibit W, Transcript of Second Hearing, at pp. 9, 10, 20; Plaintiff's Amended Complaint, at p. 9, ¶ 47. Defendant Irvin also testified at the hearing, describing the incidents which took place on May 19, 1990, and stating that the confidential informant had disclosed, within one hour of the food strike, that ILC members had organized the strike with members of the Inmate Grievance Resolution Committee, and that Plaintiff had been the ringleader of the strike. Affidavit of Patricia Priestley, Exhibit W, Transcript of Second Hearing, at p. 13–14. Irvin further stated that the confidential informant's reliability had been established through various administrative sources, including himself, and that the informant had a history of providing such information to Irvin. Exhibit W, at p. 14. Testimony as to the reliability of the informant was also provided by Defendant Walker. Affidavit of Patricia Priestley, Exhibit X. Grant denied Plaintiff access to copies of the unusual incident reports of May 20 and 21, 1990 on the grounds that they were unavailable or irrelevant, and noted that Plaintiff, a messhall employee, had also been the ringleader of a workstoppage in another correctional facility. Exhibit W, at pp. 20–21. On September 5, 1990, Grant found Plaintiff guilty and imposed a penalty of 730 days confinement in the SHU, crediting the time already served since May 20, 1990. Affidavit of Patricia Priestley, Exhibits BB and CC.

Plaintiff appealed Grant's decision to Defendant Selsky, and, upon review, the penalty was reduced to 365 days confinement in the SHU, again giving Plaintiff credit for the time served since May 20, 1990. Affidavit of Patricia Priestley, Exhibit DD and GG.

Thereafter, Plaintiff brought an Article 78 proceeding, (N.Y.Civ.Prac.Law & R. § 7801 *et seq.* (McKinney 1990)), challenging the administrative hearing on the ground that he was denied the right to call one inmate as a witness, he was denied his request to pro-

duce certain documents at the hearing, and that the hearing officer failed to make a first-hand assessment of the credibility and reliability of the confidential informant whose information was the basis of the initial misbehavior report. Affidavit of Andrew Lipkind, Esq., dated March 1, 1993, at p. 2, ¶ 4. After denying all Plaintiff's claims except for the failure to independently assess the confidential informant claim, Acting New York State Supreme Court Justice Mark H. Dadd (Wyoming County) transferred Plaintiff's Article 78 petition to the Appellate Division of the New York State Supreme Court, Fourth Department, for disposition as to whether the determination of the hearing officer was supported by substantial evidence. Affidavit of Andrew Lipkind, Esq., at p. 2, ¶ 5.

On April 24, 1992, the Appellate Division determined that the administrative record did not support a finding of guilt, and ordered the charges against Plaintiff to be expunged from his record. Affidavit of Andrew Lipkind, Esq., at p. 2, ¶ 6. At the appellate level, Plaintiff raised the issue that Defendant Selsky had violated his rights by permitting a rehearing on the initial charge following its administrative reversal. The Appellate Division found this contention to be without merit. Affidavit of Andrew Lipkind, Esq., at p. 3, ¶ 8.

At the time of the Appellate Division disposition, Plaintiff had completed his 365 day sentence in the SHU. During the time of Plaintiff's confinement to the SHU, Plaintiff claimed that he was subjected to unsanitary inhumane living conditions, and subjected to intense emotional anguish, including the attempted suicide of the inmate in the next cell. (G. 21–23, 27–28). As a result of his confinement, Plaintiff stated that he was forced to withdraw from his program as a graduate student in the American Studies Department of the State University of New York at Buffalo, that he sustained physical injuries as a result of the prison's failure to provide him with proper health care and dental hygiene, and that he suffered injury by being unable to participate in programs and services available to the general prison population. Plaintiff's Amended Complaint, at pp. 13–14, ¶¶ 73–76.

## DISCUSSION

█ Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. Celotex, supra, 477 U.S. at 331, 106 S.Ct. at 2556.

█ The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. Rattner, supra, at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. Anderson, supra, 477 U.S. at 255, 106 S.Ct. at 2513; Rattner, supra, at 209.

Plaintiff has raised five causes of action: (1) a cause of action for conspiracy to deprive Plaintiff of his civil rights by Defendants Walker, Irvin, Dann, and John Doe (the confidential informant), pursuant to 42 U.S.C. §§ 1985(3) and 1986, (2) a cause of action for cruel and unusual punishment for the treatment and unsanitary conditions Plaintiff allegedly encountered in the Attica SHU, (3) a cause of action for discrimination based on Plaintiff's claim that he was transferred to Attica because of his race, (4) a cause of action for a violation of his due process rights based on the first disciplinary hearing conducted by Defendant LeBaron, and (5) a cause of action for a violation of his due process rights based on the second disciplinary hearing conducted by Defendant Grant.

Plaintiff seeks partial summary judgment on the fourth and fifth causes of action, *i.e.*, the alleged violation of Plaintiff's due process rights during the administrative proceedings on the misbehavior reports filed against Plaintiff in regards to the May 19, 1990 food strike at Auburn. Plaintiff claims that there is no genuine issue of material fact, and that because the determination of the first disciplinary hearing was overturned by Defendant Selsky, and that the determination of the second disciplinary hearing was overturned by the Appellate Division, having ruled on Plaintiff's Article 78 petition, Plaintiff is entitled to partial summary judgment on this issue of liability. Defendants have filed a cross-motion for summary judgment, seeking to have the action dismissed in its entirety.

### (1) *Plaintiff's Fourth and Fifth Causes of Action*

Plaintiff seeks partial summary judgment on his due process claims on the basis that the first hearing violated his due process rights and was administratively reversed, and that the result of the second disciplinary hearing was held by the Appellate Division not to be based on substantial evidence.

Pursuant to 42 U.S.C. § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Plaintiff contends that his right to due process was violated at his first hearing for various reasons, including, among other contentions, that the misbehavior report was not based on substantial evidence, that he was denied the right to call witnesses, and that the hearing officer, Officer LeBaron, did not properly assess the reliability of the confidential informant, and used false information and evidence.

However, Officer LeBaron's determination of Plaintiff's guilt was reversed by Defendant Selsky after Plaintiff filed an administrative appeal. Defendants argue that the administrative reversal of the guilty determination following the disciplinary hearing cured any due process violations occurring at the hearing.

In *Young v. Hoffman*, 970 F.2d 1154 (2d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993), an inmate found guilty at a disciplinary hearing of violations of certain prison regulations later had the hearing decision reversed by the appeals officer because the original hearing officer had failed to allow the inmate to call witnesses on his behalf at the hearing. The incident at issue was then expunged from the inmate's record. The Second Circuit held that the administrative reversal of the decision to discipline the inmate cured any due process violation which occurred during the original disciplinary hearing when the hearing officer failed to allow the inmate to call witnesses. *See Young, supra,* at 1156. The court stated that it did not need to reach the issue as to whether the inmate had suffered a denial of due process at the original disciplinary hearing as, at the administrative appeal level, the inmate was afforded all of his due process rights. *See Young, supra,* at 1156 ("the administrative reversal constituted part of the due process protection [the inmate] received, and it cured any procedural defect that may have occurred"). *See also Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (constitutional violation not actionable under Section 1983 when deprivation occurs unless and until the State fails to provide due process); *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) ("procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property").

Unlike the plaintiff in *Young, supra,* however, Plaintiff was confined to the SHU during the pendency of his first appeal. In *Walker v. Bates,* 23 F.3d 652 (2d Cir.1994), the plaintiff, an inmate at the Southport Correctional Facility, was found guilty of two violations of prison rules.[2] The plaintiff was

---

2. *Walker* was decided during the pendency of Plaintiff's and Defendants' motions, and is, therefore, applicable to this action. *See, e.g., Mitchell* *v. Board of Education of the Ossining Union Free School District,* 1990 WL 124334 at *2 (S.D.N.Y. 1990) (court ordered further briefing prior to

sentenced to 120 days in the SHU and immediately began serving the sentence. The determination was reversed after administrative appeal, and the plaintiff was released from the SHU within two weeks of the reversal. The plaintiff brought a § 1983 action, alleging that his due process rights were violated when he was improperly denied the right to call witnesses at his hearing, and sought damages for the period of his detention in the SHU. The district court dismissed his claim on the ground that the administrative reversal cured the defect in the original hearing. The Second Circuit reversed, however, holding that "the rule is that once prison officials deprive an inmate of his constitutional procedural rights at a disciplinary hearing and the prisoner commences to serve a punitive sentence imposed at the conclusion of the hearing, the prison official responsible for the due process deprivation must respond in damages, absent the successful interposition of a qualified immunity defense." *Walker, supra,* at 658–659. Where the hearing officer denied the plaintiff's request for witnesses without a finding that the testimony would be "irrelevant or redundant", or that "correctional goals would be jeopardized by [the witnesses'] presence", and the plaintiff subsequently served time in the SHU, a valid cause of action remained as the "administrative appeal process [did] not bar his section 1983 claim." *Walker, supra,* at 659. *See also Mays v. Mahoney,* 23 F.3d 660 (2d Cir.1994) (reversal on administrative appeal does not cure the wrongful deprivation of a liberty interest resulting from a due process violation at a prisoner's disciplinary hearing).

■ In this case, Plaintiff was keeplocked in the SHU as of May 21, 1990. On May 25 and May 31, 1990, at the first disciplinary hearing, LeBaron denied Plaintiff's request for witnesses, stating that these witnesses were not directly involved in the food strike incident, and that, therefore, their testimony would be irrelevant to the confidential information he received from the informant on which the misbehavior report was based. *See* Affidavit of Patricia Priestley, Exhibit E, Transcript of First Hearing, at p. 13. Le-

Baron also did not make any assessment of the reliability of the confidential informant. Plaintiff was found guilty and sentenced to 730 days in the SHU which time he immediately began to serve. On August 5, 1990, Defendant LeBaron's guilty determination was reversed, and a rehearing was ordered.

At the second disciplinary hearing, Defendant Grant allowed two inmate witnesses, but denied Plaintiff's third request for inmate Green on the basis that Green was located in a different cellblock and, as such, was not directly involved with Plaintiff's behavior regarding the food strike. Grant also allowed Defendants Dann and Irvin as witnesses. Grant questioned Defendant Irvin as to the reliability of the confidential informant, and conducted a further, on the record, confidential interview with Defendant Walker, who had a previous history with the confidential informant and attested to the informant's previous reliability. Following the hearing, Defendant Grant found Plaintiff guilty of the charges, and sentenced Plaintiff to 730 days in the SHU. This sentence was modified on November 5, 1990 to 365 days in the SHU. The amount of time served by Plaintiff as of that date was credited to Plaintiff, and Plaintiff was released from keeplock on May 21, 1991 after serving a 365 day sentence.

Defendant Grant allowed Plaintiff all of his requested witnesses but one, and this denial was certainly within the discretion of the hearing officer as the information to be obtained from the witness was deemed irrelevant. Further, Grant properly assessed the reliability of the confidential informant by questioning both Defendant Irvin and Defendant Walker as to the informant's previous history of reliability. However, the results of Plaintiff's second disciplinary hearing were reversed by the Appellate Division on the ground that the guilty verdict was not based on substantial evidence, as a result of Plaintiff's filing of an Article 78 petition. Prior to the ruling in *Walker v. Bates,* the process afforded an inmate in an Article 78 proceeding was held to cure any defect in the original hearing. *Richardson v. Van Dusen,* 833 F.Supp. 146, 153 (N.D.N.Y.1993); *Maddox v. Coughlin,* 1993 WL 22156 at *1 (S.D.N.Y.

decision where relevant decision was issued during pendency of the parties' motions).

1993). *But see Moye v. Selsky*, 826 F.Supp. 712, 724 (S.D.N.Y.1993) (where plaintiff brought an Article 78 proceeding to obtain reversal of administrative determination, court found that plaintiff's due process rights were not vindicated).

The court finds that, while the Appellate Division fully litigated the facts underlying Plaintiff's disciplinary hearing, and found that the final determination of guilt was not supported by substantial evidence, the standard in raising a civil rights action is whether or not the guilty determination was based on *some* evidence. *See Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Nurse v. Duffany*, 1991 WL 24321 at *9 (S.D.N.Y.1991) (disciplinary hearing finding will be upheld in civil rights action as long as there is some evidence which supports the decision of the prison disciplinary board). After reviewing the record of Plaintiff's second disciplinary hearing, the court finds that the determination of guilt was based on some evidence, and therefore, for the purposes of filing a § 1983 action, Plaintiff received all the process he was due in the second hearing.

Further, while Plaintiff was deprived of a liberty interest during the pendency of his administrative appeal and the second hearing, Plaintiff did not suffer a denial of due process where the second hearing rectified the errors in the first hearing which had resulted in a violation of Plaintiff's due process rights. *See Harper v. Lee*, 938 F.2d 104, 105 (8th Cir.1991) (no due process violation where inmate ultimately afforded due process protection and experienced no harm). Although the guilty determination was ultimately reversed after an Article 78 proceeding, the court has found that the determination by Defendant Grant at the second hearing was based on some evidence, the applicable standard for a § 1983 action.

Further, while Plaintiff was confined in the SHU during the pendency of his administrative appeals and Article 78 proceedings, after the guilty determination in the second hearing, Plaintiff was credited for the time already served in the SHU. In *Harris v. Scully*, 1993 WL 159972 (S.D.N.Y.1993), the court held that where an inmate was found guilty of violating prison disciplinary rules at a second hearing, after the procedural defects in the first hearing had been cured, the punishment already served as a result of the first hearing may be treated as "harmless" if it is credited to any subsequent sentence the inmate must serve. *Harris, supra*, at *2 (citing *Harper v. Lee, supra*, at 105–106). *See also, e.g., North Carolina v. Pearce*, 395 U.S. 711, 718–19, 89 S.Ct. 2072, 2077–78, 23 L.Ed.2d 656 (1969) (defendant's constitutional rights not violated where, after retrial of conviction, defendant was credited for the punishment already served as a result of the first conviction).

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (citing *Dent v. West Virginia*, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889)). Here, the second disciplinary hearing conducted by Defendant Grant was, for the reasons discussed, conducted in accordance with the due process standards established in *Wolff*. As Plaintiff actually served no greater a period of punishment than had been administratively ordered, and as that discipline was determined to be fully justified at the conclusion of the second hearing, Plaintiff suffered no punishment as a result of "arbitrary action" by any defendant. *Wolff, supra*, 418 U.S. at 558, 94 S.Ct. at 2975.

Not only is this result consistent with the general due process principles laid down by the Court in *Wolff*, the conclusion that the second hearing comported with the due process standards applicable to prison discipline also fosters the institutional goals recognized by the Court in *Wolff* as one element justifying and requiring that the administration of prison discipline conform to the flexible due process standards imposed by *Wolff*. The Court specifically took into account that the minimum standards to be required of prison authorities in dealing with inmate misbehavior should be manifested in the disciplinary proceedings themselves so as to promote the "institutional goal of modifying the behavior and value systems of prison inmates ..." as

a step toward rehabilitation and eventual release. *Wolff, supra* at 562–63, 94 S.Ct. at 2978.

Plaintiff received all the process that he was due. To hold that where an inmate is determined, after a properly conducted hearing, to have violated prison disciplinary rules and suffering no deprivation of liberty not found justified as a result, nevertheless accrues an enforceable constitutional claim based on errors at an earlier proceeding, would exalt appearance over reality, contrary to the rehabilitative objectives stated by the Court in *Wolff,* and may weaken "the disciplinary process as a rehabilitation vehicle." *Wolff, supra,* at 568, 94 S.Ct. at 2980.

In this case, Plaintiff, during the pendency of his two disciplinary hearings, was given his due process rights. The fact that the determination of guilt was ultimately overturned by the Appellate Division does not change this result as the court has concluded, above, that the guilty verdict was based on some evidence, the applicable standard for civil rights actions relating to prison disciplinary hearings. Further, Plaintiff did not suffer a deprivation of his liberty interest after his second hearing where he was credited for the time served following the first hearing. Accordingly, Plaintiff's motion for partial summary judgment on the fourth and fifth causes of action is DENIED, and Defendants' motion for summary judgment on these causes of action is GRANTED.

## (2) *Qualified Immunity*

Defendants raised as an affirmative defense that Defendants LeBaron and Grant had qualified immunity for their actions in conducting the two disciplinary hearings involving Plaintiff. Plaintiff claimed that his due process rights were violated as neither Defendant assessed the credibility of the confidential informant, and that both Defendants denied him the right to call witnesses. As the court has concluded that the fourth and fifth causes of action of Plaintiff's amended complaint should be dismissed, it need not reach the issue of qualified immunity. However, the court notes that, *arguendo,* even if Defendants' summary judgment motion on these causes of action were not granted, De-

fendant Grant would be entitled to qualified immunity for his actions, although Defendant LeBaron would not.

Those individuals who adjudicate disciplinary hearings in prison are entitled to qualified immunity as opposed to absolute immunity. *Walker v. Bates,* 23 F.3d 652, 656 (2d Cir.1994). Therefore, Defendants LeBaron and Grant, both prison hearing officers, are entitled to qualified immunity from liability for damages if their conduct did not violate a clearly established statutory or constitutional right of Plaintiff. *Anderson v. Creighton,* 483 U.S. 635, 637–41, 107 S.Ct. 3034, 3037–40, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). In order to receive this protection, the hearing officer must demonstrate that it was objectively reasonable to believe that his or her conduct did not violate the clearly established right. *Weg, supra,* at 17. In determining whether a particular right was clearly established at the time the allegedly unconstitutional acts took place, a court must consider three factors: (1) whether the right in question was defined with "reasonable specificity;" (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). Further, defendant public officials, such as prison hearing officers, are "charged with knowledge of relevant decisional law, especially the decisions of the circuit in which they perform their official duties." *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989).

The Supreme Court, in *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board ... this standard is met if there was some evidence from which the conclusion of the administrative tribunal could be de-

duced." *Hill, supra,* at 455, 105 S.Ct. at 2773. The Court noted that its standard did not require independent assessment of the credibility of witnesses. *Hill, supra,* at 455–56, 105 S.Ct. at 2773–75.

■ Earlier, in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court held that, subject to the circumstances of the case and the prison administrator's discretion, a prisoner should be allowed the opportunity to call witnesses and to present documentary evidence. *Wolff, supra,* at 564–69, 94 S.Ct. at 2978–81. In *Scott v. Kelly,* 962 F.2d 145 (2d Cir.1992), the Second Circuit held that a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity. *Scott, supra,* at 146. Therefore, as of 1990, the date of Plaintiff's hearing, the right was clearly established that, subject to the prison administrator's discretion, an inmate could call his own witnesses at a disciplinary hearing.

In 1993, the Second Circuit noted that it had yet to rule upon "the issue of whether an inmate has a right to an independent assessment of the credibility of confidential informants and a contemporary record of that assessment." *Richardson v. Selsky,* 5 F.3d 616, 622 (2d Cir.1993). However, earlier, in *Zavaro v. Coughlin,* 970 F.2d 1148 (2d Cir. 1992), the court "clearly implied that prison officials should independently assess an informant's reliability if they relied upon that information in a disciplinary hearing." *Richardson, supra,* at 622.

The Second Circuit, in *Russell v. Scully,* 15 F.3d 219 (2d Cir.1993), again addressed the issue, stating that "even if there is a due process right to an independent assessment of informants' credibility—and we do not regard that issue as foreclosed in this circuit— that right would not entail more than some examination of indicia relevant to credibility rather than wholesale reliance upon a third party's evaluation of that credibility." *Russell, supra,* at 223. In *Russell,* the prison hearing officer interviewed a correctional officer who, following an assault, interviewed most of the inmates who observed the assault, including the victim and three confidential informants. The informants did not want their identities revealed. The hearing officer questioned the correctional officer as to the reliability of the confidential sources and the extent of her past experiences with the informants. There was also evidence that the hearing officer knew from prior experience that the correctional officer's confidential sources generally provided reliable information. *Russell, supra,* at 220. The court, upon rehearing, held that, as the hearing officer inquired into the reliability of the informants, and did not rely solely on the correctional officer's assessment of the credibility of the informants, along with the fact that the hearing officer was also aware that the officer's informants were historically reliable, it was objectively reasonable for the hearing officer to rely on the information. *Russell, supra,* at 223. The court stated that "it was not clearly established in 1989 (the time of the disciplinary hearing) (and it is not now) that the procedure followed by [the hearing officer] constituted a constitutionally inadequate independent examination of credibility." *Russell, supra,* at 223. Accordingly, the hearing officer was entitled to qualified immunity.

In this case, while it was clearly established that Plaintiff had the right, within the hearing officer's discretion, to call witnesses at his disciplinary hearings, it was not clearly established at the time of the 1990 hearings that Plaintiff had a right to have Defendants LeBaron or Grant independently assess the reliability of the informant. However, as of the time of the hearing in 1990, both Defendants were required to take into account, in their final determination, reliable indicia of the informant's credibility. *Russell, supra,* at 224; *Wolfe v. Carlson,* 583 F.Supp. 977, 982 (S.D.N.Y.1984) (imposition of discipline based solely on report by prison official of what an informant claims to have witnessed with no information as to the identity or the reliability of the informant is arbitrary government action) (citing *Wolff, supra,* 418 U.S. at 568, 94 S.Ct. at 2980).

Plaintiff asked to call seven witnesses at the first hearing, Deputy Superintendent Irvin, two correctional officers, Dann and Dumas, and four inmates. Defendant LeBaron indicated that one inmate witness refused to

testify, and that he was denying Plaintiff's requests for the other witnesses as they "were not directly involved in the incident and that their testimony would not be relevant to the confidential information that was given to [him] that the misbehavior report was based on." *See* Affidavit of Patricia Priestley, Exhibit E, Transcript of First Hearing, at p. 13. LeBaron also indicated that he had received confidential information from Defendants Dann and Irvin, but denied Plaintiff's request for the information. *See* Transcript of First Hearing, at p. 13. There was no assessment on the record as to the reliability or credibility of the informant. LeBaron then found Plaintiff guilty of the charges resulting from the food strike.

The court finds that Defendant LeBaron is not entitled to qualified immunity for his conduct relating to the first disciplinary hearing. LeBaron did not give more than conclusory reasons as to his refusal to allow Plaintiff to call any witnesses. Further, he conducted no assessment as to the reliability of the confidential informant. Rather, he relied solely on a third-party assessment as to the credibility of the informant. This procedure was not adequate to protect Plaintiff's rights to due process. As LeBaron did not take into account any indication of the reliability of the informant, he is not entitled to qualified immunity for his actions, as they were not objectively reasonable under the applicable precedent within the Second Circuit.

■ Defendant Grant, however, is entitled to qualified immunity. At the second hearing, Plaintiff requested three inmate witnesses, along with Dann and Irvin. Plaintiff presented his questions in writing to Defendant Grant prior to the hearing. At the hearing, Grant questioned Plaintiff as to the relevance of his witnesses. Grant then allowed two inmates, Mays and Tally, as witnesses, but denied Plaintiff's third request for inmate Green on the basis that Green was located in a different cellblock and so he was not directly involved with Plaintiff's behavior regarding the food strike. Grant also allowed Defendants Dann and Irvin as witnesses. Grant questioned Defendant Irvin as to the reliability of the confidential informant, and conducted a further on the record confi-

dential interview with Defendant Walker who had a previous history with the confidential informant and attested to the informant's previous reliability. Following the hearing, Defendant Grant found Plaintiff guilty of the charges.

Defendant Grant allowed Plaintiff all of his requested witnesses but one, and this denial was certainly within the discretion of the hearing officer as the information to be obtained from the witness was deemed irrelevant. Further, Grant properly assessed the reliability of the confidential informant by questioning both Defendant Irvin and Defendant Walker as to the informant's previous history of reliability. Accordingly, as the procedure followed by Defendant Grant cannot be found to be constitutionally inadequate as not following clearly established rights as of the time of the hearing, Defendant Grant is entitled to qualified immunity for his actions.

### (3) *Claims against Defendants Coughlin and Selsky*

■ Plaintiff also complains that Defendant Selsky should not have ordered a rehearing after he reversed Defendant LeBaron's determination, and that Selsky deprived him of his due process rights as he was aware of the violations of Plaintiff's rights but failed to correct them. These arguments are without merit.

Defendant Selsky, as the Director of Special Housing/Inmate Disciplinary Programs for the Department of Correctional Services, conducts the administrative appeals arising out of the determinations of disciplinary hearings held in the New York State prisons. As such, he performs a quasi-judicial role as a professional civilian hearing officer. This issue was discussed in both *Pacheco v. Kihl*, No. 90–549, 1991 WL 629846 (W.D.N.Y. December 18, 1991), and *Gayle v. Kihl*, No. 90–729 (W.D.N.Y. February 19, 1992), where the courts held that Selsky was entitled to absolute immunity for his actions as a professional hearing officer where Selsky affirmed decisions of the correctional officer who conducted disciplinary hearings which were later reversed. Both *Pacheco* and *Kihl* stated that Selsky, who works in the Department of

Correctional Services in Albany, New York, acted in an adjudicative capacity, on an independent basis from the prison staffs. Therefore, the courts reasoned that he was entitled to absolute immunity. *See, e.g., Dorman v. Higgins,* 821 F.2d 133, 137 (2d Cir.1987) ("some officials who are not judges but who 'perform functions closely associated with the judicial process' have also been accorded [absolute] immunity") (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985)).

In this case, Defendant Selsky was acting in the same capacity as that in which he was found to have absolute immunity in *Pacheco* and *Gayle.* The court agrees with the analysis in those cases, and, therefore, finds that Defendant Selsky has absolute immunity from liability based on his role in reversing the decision in Plaintiff's disciplinary hearing, ordering a rehearing on the matter, and modifying the determination in the second hearing.

Therefore, Defendants' motion for summary judgment on the fourth and fifth causes of action against Defendant Selsky is GRANTED on the basis that he is entitled to absolute immunity. Plaintiff's motion for summary judgment on this claim against Selsky is DENIED.

Plaintiff also claims that Defendant Coughlin failed to properly train and supervise his employees, and, therefore, is liable to Plaintiff for the violation of Plaintiff's constitutional rights.

■ Defendant Coughlin is the Commissioner of the Department of Correctional Services for New York State, and is responsible for overseeing the correctional facilities within the state, including those facilities at Auburn and Attica. It is well settled, however, that an individual cannot be liable under Section 1983 for a violation of a person's constitutional rights on the basis of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). A defendant's personal involvement in an alleged deprivation of constitutional rights is a necessary element of a § 1983 complaint. *Al-Jundi v. Estate of Nelson Rockefeller,* 885 F.2d 1060, 1065–66 (2d Cir.1989).

■ A plaintiff may show that a supervising defendant is "personally involved" within the meaning of § 1983 if the defendant: (1) directly participated in the infraction, (2) failed to remedy the violation after notification of the violation, (3) instituted a policy or custom which permitted such infractions to occur, or allowed the continuance of an unconstitutional policy or custom, or (4) acted in a manner constituting gross negligence in the management of subordinates responsible for the unlawful acts. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986). Plaintiff has failed to make any such showing in this case.

■ Plaintiff has simply set forth a conclusory statement that Coughlin is responsible for the overall operation of the Department of Correctional Services, and that he failed to properly train and adequately supervise Defendants Selsky, Walker, Irvin, Dann, LeBaron, and Grant. Additionally, Plaintiff claims that Coughlin failed to establish a policy or procedure that "would ensure specific ways of dealing with problems such as this complaint pleads," or that, if such a policy or procedure was in place, Coughlin failed to enforce such a policy. `See Plaintiff's Complaint, at p. 22, ¶ 103. In his Memorandum of Law, dated April 29, 1993, Plaintiff asserts that "since Commissioner Coughlin is overall supervisor of the DOCS and empowered to properly train his subordinates, he is liable." *See* Plaintiff's Memorandum of Law, at p. 25, Point V. However, a defendant cannot be liable under § 1983 "simply because the defendant was in a high position of authority in the prison system." *Rivera v. Coughlin,* 1994 WL 263417 (S.D.N.Y.1994) (citing *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)).

Where a plaintiff does not allege that a supervising individual had any personal involvement in the asserted constitutional violations, nor alleges that the individual promulgated or was otherwise aware of any unconstitutional customs or policies, the claim against that individual must be dis-

missed. *Parris v. Coughlin,* 1993 WL 328199 at *3 (N.D.N.Y.1993). Plaintiff has not established that Defendant Coughlin was aware of any violation of Plaintiff's constitutional rights, or that Coughlin promulgated any policies designed to violate an inmate's constitutional rights. Accordingly, Plaintiff's claims against Defendant Coughlin must fail. Defendant's motion for summary judgment as to Defendant Coughlin is GRANTED.

### (4) *Plaintiff's Transfer to Attica*

Plaintiff has raised a cause of action alleging that he was transferred from Auburn to Attica because of his race. Defendants assert that Plaintiff was transferred to Attica solely because of the allegation that Plaintiff was the "ringleader" behind the food strike at Auburn on May 19, 1990.

■ Prisoners do not have a constitutional right to remain in or to be transferred to a correctional facility of their own choosing. *Meachum v. Fano,* 427 U.S. 215, 224–225, 96 S.Ct. 2532, 2538–2539, 49 L.Ed.2d 451 (1976); *Raffone v. Robinson,* 607 F.2d 1058, 1061 (2d Cir.1979) (inter-prison transfers within a state do not trigger due process requirements).

■ Further, a prisoner who asserts an equal protection claim must prove the existence of purposeful discrimination. *McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262 (1987). In *Martin v. Groose,* 1994 WL 75784 (8th Cir.1994), an inmate was unsuccessful in his contention that he was transferred to a different facility because of his race. The inmate did not present evidence to rebut the defendant's assertion that the inmate was transferred because of a "serious security concern," not because of his race, and the court found that, on that basis, the defendant was entitled to summary judgment. *See also Jones v. Brown,* 1986 WL 16032 (6th Cir.1986) (inmate plaintiff failed to show racial animus behind prison transfer).

■ In this case, Plaintiff has presented no evidence to rebut Defendants' contention that Plaintiff was transferred to Attica from Auburn because of Defendants' belief that Plaintiff had been the chief organizer of a food strike. Defendant Irvin submitted an affidavit stating that the purpose of transferring Plaintiff to Attica was to "remove a disruptive influence from the correctional facility," as Plaintiff had been implicated as the "ringleader" of a food strike, and that other inmate industries were possibly planned to be targeted for strike purposes. Affidavit of Frank Irvin, dated March 5, 1993, at ¶ 4, 5, 8. In reply, Plaintiff denies Irvin's allegation, stating that, if such a danger was present, why was he not keeplocked immediately. Affidavit of Patricia Priestley, Exhibit W, at pp. 4–5. However, Plaintiff's statement does not raise any issue of material disputed fact. There is no evidence on this record that Plaintiff's transfer was made because of Plaintiff's race. Accordingly, Defendants' motion for summary judgment on the Third Cause of Action is GRANTED.

### (5) *Eighth Amendment Claim*

■ Plaintiff also raises a claim that his eighth amendment right to be free from cruel and inhumane treatment was violated by the unsanitary conditions present at the Attica SHU, along with Plaintiff having to witness the attempted suicide of the prisoner in the next cell. Defendants claim that the conditions of which Plaintiff complain do not rise to the level of a violation of the Eighth Amendment.

Punishment is cruel and unusual if it "deprives inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Although the Constitution, "does not mandate comfortable prisons," *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989). Conditions of confinement, however, constitute cruel and unusual punishment "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson, supra,* 501 U.S. at 304, 111 S.Ct. at 2327. "Nothing so amorphous as 'overall conditions'

can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson, supra,* at 305, 111 S.Ct. at 2327. Conditions, such as a filthy cell, may "be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney,* 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978).

In this case, Plaintiff asserts that, when he arrived at his cell in the Attica SHU, the cell was dirty and needed cleaning. (G. 21). Plaintiff acknowledged that cleaning supplies were given to him, and that he cleaned the entire cell. (G. 21–22). Plaintiff further stated that, as a result of other inmates' conduct, the area in front of Plaintiff's cell was filled with human feces, urine, and sewage water for a three day period. (G. 22). After three days, the correction officers brought an inmate porter to the area to clean. (G. 24). Plaintiff also complained of broken windows, and filed a grievance with the Attica prison authorities, of which the outcome is not known. (G. 26). Finally, Plaintiff stated that he was subjected to emotional anguish because of the attempted suicide of the inmate in the cell next door to his, although Plaintiff did not seek counseling or other medical treatment. (G. 27).

The court finds that Plaintiff has not established that he was subjected to cruel and unusual punishment in violation of his constitutional rights. Courts have found that certain conditions are not cruel and unusual where the inmate was subjected to the condition only for a short period of time. *See, e.g., White v. Nix,* 7 F.3d 120, 121 (8th Cir.1993) (no Eighth Amendment violation where prisoner was confined to allegedly unsanitary cell for eleven days, particularly where cleaning supplies were made available); *Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th Cir. 1988) (plaintiff "experienced considerable unpleasantness" for five days due to "filthy, roach-infested cell," but constitutional rights not violated).

In this case, Plaintiff was allegedly subjected to unsanitary conditions for a three day period, after which time the area was cleaned. This alleged fact, along with the incident involving the attempted suicide of another inmate, do not rise to the level of a constitutional violation under the Eighth Amendment. Accordingly, Defendant's motion for summary judgment on the Second Cause of Action is GRANTED.

**(6) Claim Under 42 U.S.C. § 1985(3) and § 1986**

Finally, Plaintiff claims that Defendant Walker, Irvin, Dann, and John Doe conspired to deprive Plaintiff of his constitutional rights under the Eighth and Fourteenth Amendments, and that Defendants Walker, Irvin, and Dann acted with racially and class-based discriminatory animus against him.

▮ In order to establish a cause of action under 42 U.S.C. § 1985, a plaintiff must show that a defendant conspired with another person to deprive the plaintiff, or a class of which plaintiff was a member, of equal protection of the laws or of equal privileges and immunities under the law. *Sorlucco v. New York City Police Department,* 888 F.2d 4, 8 (2d Cir.1989). Section 1985 provides no substantive rights itself, but merely "provides a remedy for violation of the rights it designates." *Great American Federal Savings and Loan Association v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).

In order to state a claim under 42 U.S.C. § 1985(3), a complaint must allege that the defendants who allegedly conspired sought, with discriminatory intent, to deprive the plaintiff of a right covered by the Constitution or other laws. *See Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990).

▮ In this case, Plaintiff has not alleged any discriminatory intent by the Defendants against him. Rather, he only makes a conclusory statement that Defendants, acting with "racially and class-based, invidiously discriminatory animus," *see* Plaintiff's Complaint, at p. 15, ¶ 79, conspired to deprive him of his constitutional rights by fabricating evidence linking Plaintiff to the food strike. When directly asked if he had any evidence of such a conspiracy, Plaintiff conceded that he did not. (G. 28–29).

A conclusory allegation is not enough to state a valid claim under 42 U.S.C. § 1985(3). *See Temple of the Lost Sheep, Inc. v.*

*Abrams,* 930 F.2d 178, 185 (2d Cir.1991) (claim under 42 U.S.C. § 1985(3) dismissed as the complaint was "couched in terms of conclusory allegations and failed to demonstrate 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" as required by § 1985) (quoting *New York State National Organization for Women v. Terry,* 886 F.2d 1339, 1358 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990)). Since Plaintiff's complaint does not assert that the alleged conspiracy was formed "for the purpose of depriving" Plaintiff "of the equal protection of the laws, or of equal privileges or immunities under the laws," *see* 42 U.S.C. § 1985, the Complaint fails to state a claim under 42 U.S.C. § 1985 for which relief can be granted. *See Dubois v. Connecticut State Board of Education,* 727 F.2d 44, 47 n. 3 (2d Cir. 1984). Accordingly, Defendants' motion for summary judgment on this issue is GRANTED.

■ 42 U.S.C. § 1986 imposes liability on an individual who has knowledge of wrongs prohibited under 42 U.S.C. § 1985, yet fails to prevent them. However, without a violation of Section 1985, there can be no violation of Section 1986. *Hahn v. Sargent,* 523 F.2d 461, 469–70 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A claim under 42 U.S.C. § 1986 is contingent upon a valid § 1985 claim. *See Seguin v. City of Sterling Heights,* 968 F.2d 584, 590 (6th Cir.1992); *Trerice v. Pedersen,* 769 F.2d 1398, 1403 (9th Cir.1985).

Since Plaintiff's claim under 42 U.S.C. § 1985 is being dismissed, Plaintiff's claim under 42 U.S.C. § 1986 should also be dismissed. Therefore, Defendants' motion for summary judgment on the First Cause of Action is also GRANTED.

### CONCLUSION

Based on the foregoing discussion, Plaintiff's motion for partial summary judgment is DENIED. Defendants' motion for summary judgment as to all causes of action against all Defendants is GRANTED, and this action is hereby dismissed.

SO ORDERED.