**Jerry YOUNG also known as Ramadan, Plaintiff–Appellant–Cross–Appellee,**

v.

**Richard HOFFMAN, Defendant– Appellee–Cross–Appellant.**

**No. 1326, Dockets 91–2580, 91–2593.**

United States Court of Appeals, Second Circuit.

Submitted April 22, 1992.

Decided July 31, 1992.

Jerry Young, pro se.

Martin A. Hotvet, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen., of

the State of New York, Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Darren S. O'Connor, Asst. Attys. Gen., of counsel), for defendant-appellee-cross-appellant.

Before OAKES, Chief Judge,* KEARSE and WALKER, Circuit Judges.

PER CURIAM:

Appellant Jerry Young, a/k/a Ramadan, at all relevant times incarcerated at the Shawangunk Correctional Facility, sued Hearing Officer Richard Hoffman, *pro se,* under 42 U.S.C. § 1983 (1988) for allegedly depriving him of due process in connection with a Tier III prison disciplinary hearing. This appeal requires us to determine the impact, on Young's civil rights suit, of a subsequent administrative reversal of the disposition of the disciplinary hearing. The United States District Court for the Northern District of New York, Neal P. McCurn, *Chief Judge,* granted Young's motion for summary judgment on his claim that Hoffman deprived him of his right to call witnesses at the disciplinary hearing, and awarded Young nominal damages of one dollar. The district court also granted Hoffman's motion for summary judgment with respect to Young's claims that he was improperly excluded from the hearing and did not have the charges heard by an impartial hearing officer. Young appeals the district court's decision insofar as it granted summary judgment to Hoffman, and Hoffman cross appeals the district court's determination of liability and award of damages. For the reasons set forth below, we reverse in part and affirm in part.

On June 30, 1989, a corrections officer at the Shawangunk facility filed a misbehavior report charging Young with throwing two cups of an unknown yellow liquid at him. The liquid allegedly struck the corrections officer on the upper torso and face. Later that morning, another corrections officer filed a misbehavior report charging Young with spitting in his face. This alleged conduct, if proven, would constitute violations of a prison misbehavior rule.

A disciplinary hearing was scheduled for July 5, 1989. When several corrections officers escorted Young to the hearing, he became disruptive. Objecting to the standard practice of pat frisking inmates prior to their attendance at disciplinary hearings, Young called the officers homosexuals, threatened and attempted to spit at them, and attempted to kick them. The officers returned Young to his cell.

Hoffman witnessed some of this behavior. Apparently having determined that Young's presence at the hearing would create a threat to security, Hoffman held the hearing in Young's absence. Hoffman also decided that Young had forfeited his right to call the witnesses he planned to have testify on his behalf, so the hearing was conducted without them. Hoffman found Young guilty of two counts of committing an unhygienic act, and imposed a penalty of 180 days' confinement in the special housing unit with suspension of commissary and package privileges. Hoffman also recommended that Young lose six months' good time.

Young appealed Hoffman's decision to Donald Selsky, the Director of Special Housing/Inmate Discipline for the Department of Correctional Services. Selsky reversed the hearing disposition due to Hoffman's failure to call Young's witnesses. As a result, the penalty and recommended loss of good time were vacated and the records of the hearing were expunged. Young never served a day of the penalty.

In Young's section 1983 suit against Hoffman, he alleged that he suffered a denial of due process because he was (1) barred from his disciplinary hearing, (2) prevented from calling witnesses on his behalf, and (3) denied an impartial hearing officer. Both parties moved for summary judgment. The district court referred the matter to Magistrate Judge Gustave J. DiBianco for a report and recommendation. The magistrate judge recommended that Young's motion for summary judgment be granted with respect to Hoffman's failure to permit Young's witnesses to testify. The magistrate judge reasoned, however, that compensatory damages were inappropriate because Young never served the disciplinary sentence; he therefore recom-

* After submission but before decision, Chief Judge Oakes became a Senior Circuit Judge.

mended nominal damages of one dollar. The magistrate judge also recommended that summary judgement be granted to Hoffman with respect to the remaining claims. The district court approved, and entered judgment in accordance with, the magistrate judge's report-recommendation.

The Due Process Clause provides inmates with several protective procedures that they may expect at disciplinary hearings, including the opportunity to appear at the hearing and to call witnesses. *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir.1986) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-66, 94 S.Ct. 2963, 2978-79, 41 L.Ed.2d 935 (1974)), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). These procedures, of course, must in certain circumstances give way to institutional safety or correctional goals. *Id.* at 953-54. Moreover, these procedures are not required unless "there exists a liberty or property interest which has been interfered with by the State." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989).

These principles help explain the result in *Harper v. Lee*, 938 F.2d 104 (8th Cir.1991), a case we find both persuasive and applicable to the facts at issue here. In *Harper*, a disciplinary committee had found the civil rights plaintiff, Harper, guilty of violating prison rules and sentenced him to a period of administrative segregation, a period of disciplinary detention, and a loss of good time. Harper claimed that the committee's refusal to let him put certain exculpatory log books in evidence violated his right to due process. Prison officials subsequently remanded the case for a rehearing to enable Harper to put the log books in evidence. At the rehearing, Harper introduced the log books but once again the disciplinary committee found him guilty. The Court of Appeals held that Harper had suffered no denial of due process because the remand and rehearing, as part of the due process protection to which he was entitled, rectified the initial denial of his right to put the log books in evidence. *Id.* at 105-06.

In the instant case, we need not decide whether Young suffered a denial of due process in connection with his disciplinary hearing, because like the plaintiff in *Harper*, Young was ultimately afforded his due process protections. The administrative reversal constituted part of the due process protection he received, and it cured any procedural defect that may have occurred. We believe that, as a policy matter, this possibility of cure through the administrative appeals process will encourage prison administrators to correct errors as an alternative to forcing inmates to seek relief in state or federal courts. *See Harper*, 938 F.2d at 105.

In addition, on account of the administrative reversal of Hoffman's decision, Young was never penalized on the charges of committing unhygienic acts. Therefore, he suffered no interference with a liberty interest and has no valid claim for relief. *See Thompson*, 490 U.S. at 465, 109 S.Ct. at 1911.

For the foregoing reasons, we reverse the district court insofar as it granted summary judgment and awarded damages to Young, and we direct it to enter judgment for Hoffman on the witness-related claim. The district court is affirmed in all other respects.