Victor SOWELL, Plaintiff,

v.

D. RYAN, Defendant.

No. 88–CV–1082L.

United States District Court, W.D. New York.

Dec. 14, 1992.

Victor Sowell, pro se.

Carlos Rodriguez, Asst. Atty. Gen., Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

Victor Sowell ("Sowell"), a prisoner committed to the New York State Department of Correctional Services ("DOCS"), brings this *pro se* civil rights action under 42 U.S.C. § 1983 against D. Ryan ("Ryan"), a DOCS officer at the Attica Correctional Facility ("Attica"). Sowell alleges that Ryan violated his constitutional rights by refusing to interview two witnesses and to produce certain documentary evidence at a Tier III disciplinary hearing,[1] at which Ryan presided as the hearing officer. Sowell now moves and Ryan cross-moves for summary judgment under Rule 56(c), Fed.R.Civ.P.

For the reasons set forth below Ryan's motion for summary judgment dismissing the

---

1. Under New York State regulations, misbehavior reports may be reviewed at either a Tier I, II or III hearing. Tier III hearings are generally used for more serious charges, and carry stiffer penalties. *See* 7 N.Y.C.R.R. §§ 251–52.2, 270.3.

claims against him is granted, and Sowell's motion for summary judgment is denied.

## BACKGROUND

On July 1, 1988, Corrections Officer K. Kunold ("Kunold") filed an inmate misbehavior report against Victor Sowell, who was then an inmate at the Elmira Correctional Facility ("Elmira"). The report charged Sowell with assault, inciting a riot, and refusing to obey a direct order. Sowell was then placed in the Elmira Special Housing Unit ("SHU"), pending the results of a disciplinary hearing on the charges.

On the following day, Sowell was transferred from Elmira to Attica, where a Tier III disciplinary hearing was scheduled for July 12, 1988. Sowell was confined in the Attica SHU, and assigned an assistant—Corrections Officer R. Mackie ("Mackie")—to help him prepare for the hearing. Four days before the hearing, Sowell met with Mackie and requested that Mackie interview Kunold and Corrections Sergeant Setford ("Setford"), and obtain a copy of the unusual incident report. Mackie interviewed Setford, but he was unable to get a copy of the report or to interview Kunold. Affidavit of D. Ryan. ("Ryan Aff."), Ex.C.

On July 12, a superintendent's hearing was held before Corrections Officer Rupert Fennell ("Fennell"). Before the hearing, Sowell pleaded guilty to the charge of refusing to obey a direct order, but denied the other charges. During the hearing, Fennell received into evidence Sowell's statement, the statement from Setford, and Kunold's written report. Fennell also determined, on the record, that it was unnecessary to interview or obtain a statement from Kunold because his written report was an adequate substitute for his testimony. Based on the evidence, Fennell found Sowell guilty on the remaining two charges and sentenced him to 365 days keeplock in the SHU with loss of all privileges, starting from July 1, 1988.

Sowell immediately appealed the decision to the DOCS Commissioner, Thomas Coughlin, III ("Coughlin"), claiming that he should have been allowed to see Kunold's medical records, that it was improper for Fennell to deny him the right to question Kunold, that Fennell had not asked Setford the questions Sowell had requested, and that the hearing was not commenced within the time required. On August 25, 1988, Donald Selsky ("Selsky"), the Director of the Special Housing and Inmate Disciplinary Program, reversed Fennell's decision for "procedural error" and ordered that a rehearing be commenced within seven days of receipt of his decision.

A rehearing was commenced on September 4, 1988, and defendant Ryan was assigned to be the hearing officer. Before the hearing, Sowell made a request for witnesses and documents. Sowell requested that Setford, Kunold, and an inmate named John Giles ("Giles") be interviewed, and he contends that he requested that Kunold's medical records be produced. However, because Ryan believed that the sole purpose for the rehearing was to receive Kunold's statement into evidence, the only new testimony he allowed into evidence was a pre-hearing statement given by Kunold. The hearing was completed on September 10, 1988. Ryan, relying on Kunold's statement and the entire record from the first hearing, found Sowell guilty and reinstated Fennell's sentence of 365 days keeplock in the SHU.

Sowell appealed again, this time on the grounds that he should have been allowed to re-interview Setford and to question Giles, and that Ryan should have produced Kunold's medical records. Selsky again reversed the decision for "procedural error." This time, however, no rehearing was ordered by Selsky. Instead, plaintiff was released from the SHU on November 21, 1988, and his disciplinary record was expunged.

While Sowell was confined in the SHU, after the second hearing but before Selsky's second decision, he commenced this action for injunctive relief and money damages, claiming that Ryan deprived him of due process by failing to produce all of his requested witnesses and documentary evidence. By a decision dated April 10, 1989, I denied Sowell's request for a preliminary injunction and a temporary restraining order because he had already been released from the SHU. *Sowell v. Ryan*, No. 88–1082L (W.D.N.Y.

April 10, 1989). Consequently, his only remaining claim is one for money damages.

Sowell now moves for summary judgment on the ground that the undisputed facts establish that Ryan deprived him of his right to due process. Ryan cross-moves on the grounds that his actions were lawful, that he is protected from liability by qualified immunity, and that based on *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) a procedural due process action does not lie under section 1983.

## DISCUSSION

### A. *Summary Judgment Standard*

Rule 56(c), Fed.R.Civ.P. provides that summary judgment shall be entered if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." No genuine issue of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party ..." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The burden of showing the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and all ambiguities and inferences that may reasonably be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, a non-moving party must do more than show some metaphysical doubt as to the material facts and must "come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting Rule 56(e), Fed.R.Civ.P. (alteration in original)).

### B. *Due Process*

It is well established that a prisoner has the right to call witnesses and present documentary evidence in his defense at a prison disciplinary hearing. *Wolff v. McDon-*

*nell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). But that right, which protects prisoners from arbitrary action, does not encompass the full panoply of rights afforded a defendant in a criminal prosecution. *Wolff,* 418 U.S. at 555–56, 94 S.Ct. at 2974–75; accord *Fox v. Coughlin,* 893 F.2d 475, 478 (2d Cir.1990) ("*Wolff* established a flexible standard that balanced the prisoner's interest in adequate due process against the institutional needs of the prison."). Prison officials may deny a prisoner's witness request if complying with it would be unduly hazardous to or inconsistent with "institutional safety or correctional goals," *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979, or if the requested testimony or documentary evidence is irrelevant or unnecessary to the proceeding. *Scott v. Kelly,* 962 F.2d 145, 147 (2d Cir.1992) (quoting *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991)).

In this case, however, I need not decide whether, on the facts of this case, Ryan deprived plaintiff of his rights at the hearing. Pursuant to the Court of Appeals's recent decision in *Young v. Hoffman,* 970 F.2d 1154 (2d Cir.1992), and the recent decision in *Williams v. Tavormina,* No. 89–1247T, 1992 WL 487335 (W.D.N.Y. August 28, 1992) (Telesca, C.J.), I find that Sowell was afforded adequate due process protection regardless of whether a procedural error occurred at his second disciplinary hearing. In *Young,* the Second Circuit held that an inmate who had brought an action against a prison hearing officer for denial of due process at a disciplinary hearing, after the hearing officer's decision was reversed on administrative appeal, was afforded his due process protection because the "administrative reversal constituted part of the due process protection he received, and it cured any procedural defect that may have occurred." *Young,* 970 F.2d at 1156. Accord *Harper v. Lee,* 938 F.2d 104, 105 (8th Cir.1991) (administrative appeal process is part of the due process protection afforded prisoners). Similarly, in *Williams,* based on facts similar to those in *Young,* Chief Judge Telesca held that the inmate plaintiff received adequate due process protection after the hearing officer's decision, which found plaintiff guilty of

assaulting a fellow inmate, was reversed on administrative appeal. *Williams,* slip op. at 7–8. Thus, as in *Young* and *Williams,* because Ryan's decision was ultimately reversed on administrative appeal, Sowell received all the due process protection required by law. *Accord Harper,* 938 F.2d at 105.

There is one facet of this case that arguably distinguishes it factually from *Young.* In *Young* the inmate plaintiff never served a day of the sentence imposed at the disciplinary hearing. Sowell, on the other hand, was confined to the SHU for almost five months while two administrative appeals were pending. However, the simple fact that Sowell was confined to the SHU during the pendency of his appeal is not dispositive, and does not command a contrary result. *See Williams,* slip op. at 8. *But see Moore v. Scully,* No. 90–3817MEL, 1992 WL 322018 (S.D.N.Y. October 28, 1992) (disagreeing with *Williams* ).

First of all, Sowell had pleaded guilty to one of the charges—refusing to obey a direct order—and he could have been confined based on that admission. New York State's Codes, Rules and Regulations ("N.Y.C.R.R.") provide that where an inmate admits to the charges at a Tier III hearing, the hearing officer may impose a penalty of confinement to SHU. 7 N.Y.C.R.R. § 254.7(a)(1)(iii).[2] Therefore, after the first hearing, Sowell's status differed from other inmates in that he had pleaded guilty to violating a prison rule.

But even if Sowell had not admitted guilt on one of the charges, I believe that the decision in *Young* bars plaintiff's action for damages.

In *Young,* the Court of Appeals held that an administrative reversal "cures" any procedural defect that may have occurred at the disciplinary hearing. *Young,* 970 F.2d at 1156. I understand "cures" to mean that even if a due process violation occurred at

the hearing, there is no cause of action under section 1983 on the basis of that violation, because the inmate ultimately received the due process owed him under the law. The inmate was able to vindicate his hearing rights by means of the administrative appeal afforded to him. Whether the prisoner was confined during the appeal process is wholly irrelevant to this analysis. Therefore, Sowell has no cause of action for alleged due process violations that Ryan may have committed at the disciplinary hearing.

Confinement in SHU may constitute the alleged damage suffered by Sowell but before "damages" can be considered, there must be a finding that he suffered a due process violation. The extensive appellate procedure available to Sowell resulted in his vindication. He did not suffer from a denial of due process; rather the process afforded to him ultimately vindicated his rights and resulted in the charges being abandoned and dismissed.

The fact that it took some time to vindicate these rights while Sowell prosecuted his appeal and the fact that he remained confined during that process is unfortunate, but some delay caused by the litigation process is certainly not unique to prisoner litigation. Litigation is rarely resolved in a day.

In this case, plaintiff's appeals were handled within the time-frame established by regulation. Section 254.8 of Title 7 of the N.Y.C.R.R. provides that any "inmate shall have the right to appeal the disposition of any superintendent's hearing, to which he was a party, to the commissioner within 30 days of receipt of the disposition. The commissioner or his designee shall issue a decision within 60 days of receipt of the appeal." 7 N.Y.C.R.R. § 254.8. Both administrative reversals were rendered within 60 days of receipt of the appeal.

---

**2.** Section 254.7(a)(1)(iii) provides:

Where an inmate *admits the charges,* or where the hearing officer affirms the charges on the basis of the evidence, the hearing officer may impose one or more of the following penalties:

. . . . .

(iii) confinement to a cell or room continuously or to a special housing unit continuously or

on certain days during certain hours for a specified period; . . . (emphasis added).

Furthermore, New York State has not created a liberty interest in remaining out of SHU following a determination of guilt pending completion of the administrative appeal process. In fact, applicable regulations provide the contrary. The N.Y.C.R.R. provides that an inmate may be admitted to the SHU after "[d]isposition of Superintendent's (Tier III) Hearing for a designated period of time as specified by the hearing officer (7 N.Y.C.R.R. 254.7)," N.Y.C.R.R. § 301.2(a). *Cf.* 7 N.Y.C.R.R. § 301.3(a)(1) (inmate who is awaiting determination of a superintendent's hearing may be admitted to SHU under detention admission).

Sowell has offered no evidence to suggest that prison officials abused their discretion in confining him in the SHU during the hearing and appeal process. " 'Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983) (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)) (alterations in original). Here, Sowell was charged with assault and inciting a riot, and he had already pleaded guilty to refusing to obey a direct order. As such, it was within the discretion of prison officials to believe that Sowell was a threat to the safety and security of the facility and to confine him in the SHU during the hearing and appeal process.[3] *See Williams,* slip op. at 8.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and the action is dismissed.

IT IS SO ORDERED.

---

**3.** After the first hearing, the hearing officer imposed the penalty of 365 days keeplock in SHU "to impress upon the inmate that his behavior presents a threat to the safety and order of the facility and therefore cannot be condoned." Ryan Aff.Ex.C. After the second hearing, Ryan

reinstated the penalty imposed at the first hearing to "impress upon [Sowell] that these types of actions [assault, inciting a riot, and disobeying a direct order] are very serious and will not be tolerated." *Id.,* Ex.F.