45 F.3d 1119
 31 Fed.R.Serv.3d 1466
 Sherman MORISSETTE, Plaintiff-Appellant/Cross-Appellee,
v.
Howard PETERS and Thomas Huskisson,
Defendants-Appellees/Cross-Appellants,
and
Marvin Skidmore and Vera Hutchinson, Defendants-Appellees.
 Nos. 93-3154, 93-3301.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Dec. 21, 1994*.
Decided Jan. 24, 1995.
 
 Sherman Morissette (submitted) pro se.
 Peter V. Bustamante, Asst. Atty. Gen., Paul F. Carlson, Susan Frederick Rhodes, Asst. Atty. Gen., and Barrington D. Baker, Office of the Atty. Gen., Chicago, IL, for defendants.
 Before POSNER, Chief Judge, CUMMINGS and MANION, Circuit Judges.
 PER CURIAM.
 
 
 1
 Sherman Morissette, an inmate serving a life sentence at the Pontiac Correctional facility, brought an action under 42 U.S.C. Sec. 1983 claiming that the defendants violated his right to due process of law and subjected him to cruel and unusual punishment. Defendant Peters is the warden of the facility, defendant Skidmore is a correctional captain at the facility, defendant Huskisson is a member of the facility's Adjustment Committee, and defendant Hutchinson is a grievance officer. The magistrate[1] granted summary judgment to Morissette on the due process claim and awarded $1.00 in nominal damages. The magistrate granted summary judgment to the defendants on all other claims and denied Morissette leave to amend his complaint. Both sides appealed.[2] We reverse as to the due process claim and affirm in all other respects.
 
 I. Due Process Claims
 
 2
 Morissette was caught carrying two packages of marijuana on his person at the prison. He was charged with violating three prison disciplinary rules: 1) possession of dangerous contraband (Section 104); 2) possession of drugs and paraphernalia (Section 203); and 3) possession of unauthorized property (Section 308). The Adjustment Committee, chaired by defendant Huskisson, found the violations had occurred and recommended Morissette receive a revocation of one year good time, one year in segregation, and a demotion to "C" grade for one year. Warden Peters approved the recommendation.
 
 
 3
 On April 4, 1990, the Administrative Review Board concluded that the charge that marijuana was "dangerous contraband" could not be substantiated and recommended that six months good time credit be restored, the sentence of segregation be reduced to six months, and the reduction to "C" grade be limited to six months. The recommendation was accepted, and Morissette's records were adjusted to reflect the decision as of June 1990. In the interim, Morissette was found guilty of two unrelated offenses, one of which was punishable with 15 days segregation and the other punishable with a year in segregation.
 
 
 4
 Morissette claims he was denied due process in the decision of the Adjustment Committee because marijuana is not "dangerous contraband." Morissette maintains that he is entitled to compensation for the days he remained in segregation in excess of the six months he could properly be sentenced for possession of marijuana.[3]
 
 
 5
 The magistrate concluded there was a due process violation, as there was no evidence to support the finding that marijuana was "dangerous contraband." (Order I at 6.) But because Morissette's records were corrected and his subsequent sentence was adjusted to incorporate the correction (resulting in no additional time in segregation being served), the magistrate concluded that Morissette was only entitled to nominal damages. (Order I at 6-7.)
 
 
 6
 As the erroneous disciplinary action regarding "dangerous contraband" was reversed by the Administrative Review Board, we conclude Morissette has no due process claim. There is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process. See Harper v. Lee, 938 F.2d 104, 105 (8th Cir.1991). The administrative appeal process is part of the due process afforded prisoners. Id.; Griffin-Bey v. Bowersox, 978 F.2d 455, 456-57 (8th Cir.1992). See also Griffin v. Fairman, 770 F.Supp. 1271 (N.D.Ill.1991), aff'd. without opinion, 9 F.3d 112 (7th Cir.1993).[4] Further, as noted by the magistrate, any extra days that were served by Morissette were credited to his subsequent sentence, with the net result being he did not serve any additional time in segregation due to the improper portion of the disciplinary decision. (See Record # 23, Exhibit B (segregation calculation).) Cf. Hornsby v. Miller, 725 F.2d 1132, 1136 (7th Cir.1984) (prisoner received all relief he was entitled to with correction of good time computation).
 
 II. Eighth Amendment
 
 7
 Morissette's Eighth Amendment claims relate to the time he was in control segregation, from December 14, 1989 to December 23, 1989. Morissette claimed this confinement was improper because:
 
 
 8
 1. the cell was filthy and covered with gang graffiti;
 
 
 9
 2. he was denied cleaning supplies;
 
 
 10
 3. there were exposed wires over the bed and he was shocked on two occasions during his confinement;
 
 
 11
 4. the shocks caused burns and psychological problems;[5]
 
 
 12
 5. he was denied medical attention for the burns despite repeated requests;
 
 
 13
 6. the wires were not fixed despite repeated requests.
 
 
 14
 The magistrate concluded the alleged dirtiness of the cell was not enough to support a claim under the Eighth Amendment. (Order I at 3-4.) The magistrate further found in favor of the defendants on the medical care claim, noting that Morissette did not contest defendants' medical logs, which stated Morissette did not request medical care while he was in control segregation and only complained of a boil when he sought medical treatment the following month. (Order I at 4. See also Record # 23, Exhibits C and C-1 (medical logs).) The magistrate held the defendants lacked the requisite knowledge and intent to support an Eighth Amendment claim regarding the electrical wiring, and that the wiring itself was merely an easily avoided inconvenience. (Order III at 3.)
 
 
 15
 As Morissette made no arguments relevant to his Eighth Amendment claims until his reply brief, his claim may be properly considered waived. Wilson, 956 F.2d at 741; Egert, 900 F.2d at 1035. However, even if the claims were not waived, they would fail. The Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer v. Brennan, --- U.S. ----, ----, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). See also Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir.1992). Morissette has presented no evidence any of the defendants were even remotely aware of the conditions in his cell.[6]
 
 III. Leave To Amend
 
 16
 Morissette claims he should have been granted leave to amend his complaint to add as additional defendants the guards whom Morissette alleges possessed actual knowledge of the electrical wiring problem in his cell.
 
 
 17
 Morissette moved to amend on November 28, 1992, nearly a year after the magistrate's first order disposed of most of his claims and during the pendency of defendants' second motion for summary judgment on the final claim. The magistrate denied the motion, finding that Morissette was attempting to reopen issues that had been decided a year earlier, that the case was nearly ready for trial as only one issue remained, and that the statute of limitations had run regarding the proposed new defendants. (Order II.) The magistrate later acknowledged that this court's decision in Dixon v. Chrans, 986 F.2d 201 (7th Cir.1993), invalidated his statute of limitations conclusion. (Order III at 3.) However, the magistrate concluded amendment was still inappropriate, as there was no valid claim against the new defendants because of their lack of the requisite intent to punish and the trivial nature of the electrical wiring problem. (Order III at 4-6.)
 
 
 18
 Denial of a motion for leave to amend will only be overturned if the trial court abused its discretion. Estate of Porter v. State of Illinois, 36 F.3d 684, 689 (7th Cir.1994). There is no abuse of discretion in denying a motion to amend if amendment would be futile (pleading would not survive a motion for summary judgment), or there has been undue delay (motion filed on the eve of trial). Id. at 690; Perrian v. O'Grady, 958 F.2d 192, 194-95 (7th Cir.1992). There was no abuse of discretion in this case.
 
 
 19
 Morissette sought leave to amend very late in the proceeding, when trial or resolution of the case via summary judgment was imminent. Further, Morissette's electrical wiring claim (as he describes it) is meritless. Conditions of confinement must be severe to support an Eighth Amendment claim; "the prison officials' act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' " Farmer, --- U.S. at ----, 114 S.Ct. at 1977 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). See also, Lunsford v. Bennett, 17 F.3d 1574, 1579 (7th Cir.1994) (the Eighth Amendment only protects prisoners from conditions that "exceed contemporary bounds of decency of a mature, civilized society."); Jackson, 955 F.2d at 22.
 
 
 20
 According to Morissette, the wiring was 18" above the bed and stuck out approximately 3" from the wall, and he received two shocks during his nine days in confinement. (Morissette's Brief at 2.) By Morissette's own description, this condition was a minor hazard that was easily avoided. Given the temporary nature of his confinement, and the fact the wiring was primarily an unpleasant inconvenience, Morissette has no claim under the Eighth Amendment. Further, Morissette's claim is based primarily on the allegation the guards were made aware of the problem, and that the wiring was not fixed during the brief time Morissette was in the control segregation cell. As noted by the magistrate, this indicates no more than negligence on the part of the guards, which is not sufficient to support an Eighth Amendment claim. See Farmer, --- U.S. at ---- - ----, 114 S.Ct. at 1978-79.
 
 
 21
 AFFIRMED IN PART and REVERSED IN PART.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 The parties agreed to have their case decided by a magistrate, per 28 U.S.C. Sec. 636. The magistrate issued three orders that are the subject of this appeal, one dated December 17, 1991 ("Order I"), one dated December 16, 1992 ("Order II"), and one dated August 27, 1993 ("Order III")
 
 
 [2]
 Morissette raises three issues in his main brief: 1) he was inappropriately denied costs and punitive damages; 2) the court erred in denying him leave to amend; and 3) the court improperly calculated his release date from segregation. Morissette also raises numerous claims and arguments in his reply brief that were not in his main brief, or, in some cases, even raised before the lower court. These claims and arguments are waived. See Dixon v. Chrans, 986 F.2d 201, 203 (7th Cir.1993); Wilson v. Giesen, 956 F.2d 738, 741 (7th Cir.1992); Egert v. Connecticut General Life Insurance Co., 900 F.2d 1032, 1035 (7th Cir.1990)
 
 
 [3]
 Morissette seeks compensation for 22 days in segregation. Twenty-two days is the "gap" period he was in segregation from the hypothetical end of the corrected sentence and the beginning of the subsequent detention for unrelated misconduct. (Morissette's Reply at 6-7.) The error Morissette claims the magistrate made in calculating Morissette's correct release date from segregation was a typographical error that the magistrate corrected in Order III. (See Order III at 1-2.)
 
 
 [4]
 The defendants originally relied upon Young v. Hoffman, 970 F.2d 1154 (2d Cir.1992), cert. denied, --- U.S. ----, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993), for this proposition. The Young court concluded that the administrative appeal process had cured a procedural error in the initial hearing. 970 F.2d at 1156. See also Russell v. Scully, 15 F.3d 219 (2d Cir.1993). But the administrative appeal must correct the procedural error before the punishment has begun. See Walker v. Bates, 23 F.3d 652, 657-59 (2d Cir.1994) U.S.App.Pndg. The court in Walker concluded that if the prisoner has begun his punishment before the defect is cured on appeal, the prison board is answerable in damages absent a successful qualified immunity defense. Id. Once the cause of action accrues, nothing the state subsequently does can cut off the Section 1983 action. Id. at 657. The court emphasized that prisoner Walker would not have been placed in segregation but for the invalid decision. Id. at 658. The driving force behind this conclusion, however, was the deprivation of a liberty interest for which compensation must be made. Id
 In this case, Morissette sustained no undeserved deprivation. He was in valid detention for his section 203 and 308 marijuana charges and any additional days complained of were credited against subsequent detention for the unrelated misconduct. The rule of Young and Walker is therefore inapposite to Morissette's situation.
 
 
 [5]
 Morissette claimed he suffered permanent scarring and "schizophrenia" as a result of the shocks. (Record # 32 at 1.)
 
 
 [6]
 Further, the dirtiness of the cell, given the temporary confinement and lack of physical harm, would not support an Eighth Amendment claim. See Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988)