**Theresa Annette TORRICELLAS (Daniel), Plaintiff,**

v.

**Susan E. POOLE, James Costello, D. Dornan, Doris Frey, J.V. Gonzales, A.E. Huyler, John Laudeman, John Lee, P. Lockhart, C. Nakagawa, Frank D. Powell, Henry W. Provencher, N. Rodriguez, Defendants.**

No. Civil 95–0230–RSWL(RC).

United States District Court, C.D. California.

Feb. 4, 1997.

Theresa. Annette Torricellas, Frontera, CA, pro se.

Sara E. Turner, Los Angeles, CA, for defendants.

## JUDGMENT

LEW, District Judge.

Pursuant to the Order of the Court approving the recommendations of the United States Magistrate Judge, and adopting the same as the facts and conclusions of law herein,

IT IS ADJUDGED that the Complaint and action be dismissed with prejudice against defendant Doris Frey; and

IT IS FURTHER ADJUDGED that Judgment be entered in favor of all other defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, as well as plaintiff's objections filed January 27, 1997, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Complaint and action are dismissed against defendant Doris Frey for lack of subject matter jurisdiction and with prejudice due to witness immunity, and Judgment shall be entered accordingly; and (3) summary judgment is granted to all other defendants, and Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Ronald S.W. Lew, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## BACKGROUND

On December 12, 1994, plaintiff Theresa Torricellas, a state prisoner proceeding *pro se* and *in forma pauperis,* filed a complaint under 42 U.S.C. § 1983 against twelve prison officials, Susan E. Poole, James Costello, D. Dornan, J.V. Gonzales, A.E. Huyler, John Laudeman, John Lee, P. Lockhart, C. Nakagawa, Frank Powell, Henry Provencher, and N. Rodriguez, and against fellow prisoner Doris Frey.[1] The plaintiff claims that her constitutional rights were violated when a Christmas party was held in the prison visiting room, and when she was subsequently charged with a disciplinary violation after she complained about the propriety of the Christmas party. The plaintiff alleges that the Christmas party was in violation of the First Amendment's establishment clause. The plaintiff further alleges that the disciplinary charge was in retaliation for her assertion of her First Amendment right to file a grievance, and that the subsequent disciplinary hearing violated her Fourteenth Amendment due process rights.

The plaintiff alleges the following: On December 26, 1993, a Christmas party was in progress while plaintiff met with a visitor in the prison visiting room. (Complaint, page 15, ¶ 7). The Christmas party was sponsored by the Women's Auxiliary Committee ("WAC"), an inmate group whose members were elected by the inmate population. (Complaint, page 15, ¶ 7). Cookies, candy, and punch were served, small gifts were presented to children, and Christmas carols were sung. (Complaint, page 15, ¶¶ 7, 8). Although plaintiff took advantage of the refreshments offered, the plaintiff and her visitor found the singing loud and objected to the Christian content of some of the carols. (Complaint, pages 16, 18–19, ¶¶ 10, 17).

The plaintiff was allegedly "offended and distressed by the unwelcome intrusion on her personal visit." (*Id.*). She attempted to find out how long the singing would continue and

---

1. Defendant Susan E. Poole is Warden of California Institution for Women, Frontera, California ("CIW"); defendants James Costello, D. Dornan, J.V. Gonzalez, A.E. Huyler, John Lee, Henry W. Provencher, N. Rodriguez, and P. Lockhart are correctional officers at CIW; defendant John Laudeman is CIW Associate Warden and Chief Disciplinary Officer; defendant Frank Powell is CIW Chief Deputy Warden; and defendant C. Nakagawa is Department of Correction's Appeals Examiner.

whether "there would be a possibility of relief from the noise" during her visit, and was informed by defendant Gonzalez that the activity was preauthorized by the prison's administrative staff. (Complaint, page 17, ¶¶ 11–14). The plaintiff also talked briefly with an inmate in the singing group and defendant Lockhart, and was informed by defendant Lockhart that she could go outside if the noise bothered her, which she and her visitor did. (Complaint, page 18, ¶ 15). The plaintiff remained outside for "most" of the visit, returning inside only to pick up snacks, at which time she inquired of the WAC hostesses about the authorization for the Christmas program. (Complaint, pages 18–19, ¶ 17). Defendant Frey, a WAC member, briefly debated with the plaintiff over her opposition to the program, while another inmate informed plaintiff where to direct her grievance about the program. (Complaint, pages 18–19, ¶¶ 17–18).

Shortly thereafter, defendants Dornan and Gonzalez approached plaintiff and asked her to come with them to the staff office. (Complaint, pages 19–20, ¶ 19). Once in the staff office, the plaintiff alleges that defendant Gonzalez attempted to get her to change her opinion about the Christmas program and to discourage her from filing a grievance. (Complaint, page 21, ¶ 21). When she refused, defendant Gonzalez informed her that he was terminating her visit. (Id.).

The plaintiff subsequently filed two grievances: one regarding the termination of her visit and one regarding the Christmas party. (Complaint, page 22, ¶ 24). Approximately ten days after placing the grievances in inmate mail, plaintiff was served a "serious" class rules violation report for "inciting," under Cal.Code Reg. tit. 15, § 3004(b). (Complaint, page 22, ¶ 25). The plaintiff alleges that the disciplinary charge was in retaliation for her filing the two grievances. (Complaint, page 27, ¶ 37). The plaintiff further alleges that the information supporting the disciplinary charge was incorrect and that the charge was based, in part, on information from unidentified inmates. (Complaint, pages 23, 26–27, ¶¶ 26–27, 32, 34).

A disciplinary hearing was held on February 3, 1994. (Complaint, Exh. C). The plaintiff alleges that the disciplinary hearing was constitutionally deficient for the following reasons: staff reports were inaccurate, she was found guilty of a charge different than the one alleged, the reporting employee was not allowed to attend the hearing, and the written report of the hearing did not state the evidence supporting the guilty finding. (Complaint, pages 28–29, ¶¶ 37, 39, 40–41). The hearing officer recommended the loss of thirty days of good time credits, a thirty days privilege loss, and no visiting for two weeks; however, a rehearing subsequently was ordered based on the failure of the reporting employee to attend the hearing and failure to assign an investigative employee to assist the plaintiff. (Complaint, pages 29–30, ¶¶ 43–44).

During the hiatus before the rehearing, plaintiff was denied a conjugal visit due to the pending disciplinary charge. (Complaint, page 30, ¶ 45, Exh. F). At the rehearing, which was held on May 14, 1994, the plaintiff alleges that several of the witnesses she had requested were not present, and only one of the staff members plaintiff had requested was called by the hearing officer. (Complaint, page 32–33, ¶¶ 50, 51, Exh. G). The plaintiff was found guilty of "disruptive behavior," but no disciplinary action was taken; rather, the plaintiff was "counseled and reprimanded at length concerning this infraction." (Complaint, pages 33–34, ¶¶ 52, 54, Exh. G). The plaintiff appealed, and the charges and guilty finding were subsequently dismissed. (Complaint, page 34, ¶ 56, Exh. H).

The plaintiff's grievances regarding the Christmas program and the early termination of her visit were denied, and her appeals also were denied at both the institutional and director's level. (Complaint, pages 35–36, ¶¶ 57–59, Exh. A).

The plaintiff seeks compensatory damages of $2,500.00 and punitive damages of $3,000.00 against each defendant. (Complaint, page 6). The plaintiff further requests declaratory and injunctive relief. (Id.).

■ Defendants Poole, Costello, Dornan, Gonzales, Huyler, Laudeman, Lee,

Lockhart, Rodriguez, and Provencher filed an answer on April 17, 1995, and defendants Powell and Nakagawa filed an answer on June 30, 1995.[2] On February 12, 1996, all answering defendants filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, and on February 14, 1996, plaintiff was given notice of the requirements to respond to a motion for summary judgment. *See Klingele v. Eikenberry,* 849 F.2d 409, 411–12 (9th Cir.1988). After requesting, and being granted, an extension of time to respond, plaintiff filed an opposition to the motion for summary judgment on April 18, 1996. Answering defendants thereafter filed a reply on April 22, 1995. On April 30, 1996, plaintiff filed a document entitled "Plaintiff's Declaration in Support of Opposition to Defendants Motion for Summary Judgment."

## DISCUSSION

### I

Summary judgment is authorized by Fed. R.Civ.P. 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for *granting* a motion for summary judgment is essentially the same as for granting a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict.... If reasonable minds could differ," judgment should not be entered

in favor of the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). An issue of material fact is one that affects the outcome of the litigation and requires a trial to resolve. *See S.E.C. v. Seaboard Corp,* 677 F.2d 1301, 1305–06 (9th Cir.1982). The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to her case. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

---

**2.** The plaintiff has filed a proof of service showing that defendant inmate Doris Frey was personally served on March 13, 1995, by Cheryl Morgan. Defendant Frey, however, has not filed a responsive pleading. Assuming the service of process was properly effected, this Court finds *sua sponte* that plaintiff cannot state a claim under Section 1983 against defendant Frey, and the Complaint should, thus, be dismissed against her.

The plaintiff alleges that defendant Frey, as an inmate representative to the auxiliary, was acting as an agent of the state under color of law. There is no merit to this contention. *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982) (there must be "significant" state involvement in the individual's action); *Gorenc v. Salt River Project Agric. Improvement and Power Dist.,* 869 F.2d

503, 506–08 (9th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 256, 107 L.Ed.2d 205 (1989) (provides four different tests for determining whether there is state involvement in private action such that the private action rises to the level of state action, none of which are met in this case).

Moreover, if the basis of plaintiff's claim against defendant Frey is that she complained about plaintiff, defendant Frey is immune from suit. *See Briscoe v. LaHue,* 460 U.S. 325, 334–41, 103 S.Ct. 1108, 1115–19, 75 L.Ed.2d 96 (1983) (witnesses immune from liability); *Burns v. County of King,* 883 F.2d 819, 821 (9th Cir. 1989) (witnesses immune from liability).

Finally, for the reasons discussed herein, even if defendant Frey were found to be acting under color of law, there is no merit to any of the claims against her.

## II

The plaintiff asserts that defendants Poole, Laudeman, Nakagawa, and Powell violated her First Amendment rights under the establishment clause when subjecting her to a Christmas party in the visiting room of the prison on December 26, 1993. The establishment clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion...." The Supreme Court has interpreted the establishment clause to mean that:

> [G]overnment may not promote or affiliate itself with any religious doctrine or organization, may not discriminate among persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious belief and practices, may not delegate a governmental power to a religious institution, and may not involve itself too deeply in such an institution's affairs.

*County of Allegheny v. ACLU*, 492 U.S. 573, 590–91, 109 S.Ct. 3086, 3099, 106 L.Ed.2d 472 (1989).

Because total separation between church and state is not possible "in an absolute sense," the Supreme Court has formulated a three part test to evaluate claims of violation of the establishment clause. *Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971); *Separation of Church and State Committee v. City of Eugene*, 93 F.3d 617, 619 (9th Cir.1996).[3] Under the *Lemon* test, governmental action of an arguably religious nature does not violate the Constitution if it has a secular purpose, its principal or primary effect neither advances nor inhibits religion, and the activity does not foster "an excessive governmental entanglement with religion." *Id.* at 612–13, 91 S.Ct. at 2111 (quoting *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970)). Application of the *Lemon* test here compels the conclusion that the Christmas party was not a violation of the plaintiff's First Amendment rights.

In applying the first prong of the *Lemon* test, the Supreme Court has emphasized that the purpose of the challenged action need not have been "exclusively secular." *Lynch v. Donnelly*, 465 U.S. at 681 n. 6, 104 S.Ct. at 1363 n. 6; *see also Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir.1993) (to violate establishment clause, contested action must be "motivated wholly" by an impermissible purpose), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994). The Christmas party here had a secular purpose: to permit inmates and their families to celebrate the holidays together in a festive atmosphere, under the controlled circumstances of the prison visiting room. (MSJ, Exh. 5, Declaration of N. Rodriguez ("Rodriguez Decl."), ¶ 5); *See Lynch*, 465 U.S. at 681, 104 S.Ct. at 1363 (celebrating the Christmas holiday can be a secular purpose). Such activities foster penological purposes.

In applying the second prong of the *Lemon* test, the context of the challenged action must be considered. Despite some religious content, if the "primary" or "principal" effect of the action may be secular, the action does not violate the establishment clause. *See Lynch*, 465 U.S. at 680, 104 S.Ct. at 1363 (when viewed "in the proper context of the Christmas Season," creche does not have the primary or principal religious effect); *O'Connor v. State of California*, 855 F.Supp. 303, 307–08 (C.D.Cal.1994) (although Alcoholics Anonymous program had some religious content, its principal effect was to treat substance abuse and, thus, could be endorsed and promoted by the state); *Florey v. Sioux Falls School Dist. 49–5*, 619 F.2d 1311, 1317 n. 5 (8th Cir.1980) (Christmas carols have non-religious cultural significance), *cert. denied*, 449 U.S. 987, 101 S.Ct. 409, 66 L.Ed.2d 251 (1981). Further, secular components to the challenged action dilute its religious effect. *Kreisner*, 1 F.3d at 794.

The primary or principal effect of the Christmas party here was neither to advance nor inhibit religion. As plaintiff herself concedes, the Christmas party was largely a

---

3. Although the Supreme Court has often applied the *Lemon* test in evaluating establishment clause claims, it has repeatedly emphasized that the *Lemon* test is not to be applied rigidly and that other factors also may be taken into account. *See, e.g., Lynch v. Donnelly*, 465 U.S. 668, 679, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984).

secular affair, with inmates and others dressed in elf costumes, food provided, and gifts given to children. (Plaintiff Decl., page 47; Complaint, page 15, ¶¶ 7, 8). The sole religious aspects of the Christmas party identified by the plaintiff were that the party was denominated a "Christmas" party and some of the carols and songs contained religious lyrics. Neither aspect supports plaintiff's argument that the principal or primary effect of the party was to advance religion. *See Lynch,* 465 U.S. at 680, 104 S.Ct. at 1362–63; *Florey,* 619 F.2d at 1317 n. 5.

Finally, in applying the third prong of the *Lemon* test, the Court must determine whether the party fostered an "excessive entanglement" by the government with religion. As discussed above, the Christmas party's purpose and primary effect were secular, not religious, thereby ensuring no "excessive entanglement" by the state. Moreover, the Christmas party was proposed by WAC, an inmate representative group, and not by the state prison officials. (MSJ, Exh. 2, pages 29–34). The WAC members took responsibility for setting up and cleaning up the room, decorating, providing the refreshments and the entertainment, and buying the presents for the children. (*Id.*). Although prison officials approved the WAC request for the party and were present during the party, they did not control the content of the entertainment. (*Id.*) Custodial oversight "merely to ensure order and good behavior, does not impermissibly entangle government in the day-to-day surveillance or administration of religious activities." *Board of Education of Westside Community Schools v. Mergens,* 496 U.S. 226, 253, 110 S.Ct. 2356, 2373, 110 L.Ed.2d 191 (1990). Thus, there is no merit to plaintiff's claim that her First Amendment rights under the establishment clause were violated by defendants.

### III

Plaintiff also claims defendants Poole, Dornan, Frey, Gonzalez, Laudeman, Lockhart, Nakagawa, Provencher, Rodriguez, and Powell violated her First Amendment free speech rights when she was "retaliated against" for filing a grievance relating to the Christmas party and the early termination of her visit. The plaintiff claims that the bringing of disciplinary charges against her constitutes such retaliation.

An action taken by a prison official against an inmate in retaliation for the use of the prison's grievance process violates that inmate's First Amendment rights. *Thomas v. Carpenter,* 881 F.2d 828, 829 (9th Cir.1989), *cert. denied,* 494 U.S. 1028, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989); *Rizzo v. Dawson,* 778 F.2d 527, 531–32 (9th Cir.1985); *Farr v. Blodgett,* 810 F.Supp. 1485, 1490 (E.D.Wash. 1993). To make a claim for retaliation, however, the inmate has the burden of showing that retaliation was the substantial or motivating factor behind the conduct of the prison official and that the alleged retaliatory acts did not advance the legitimate goals of the institution or were not narrowly tailored to achieve such goals.[4] *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Thomas v. Carpenter,* 881 F.2d at 830; *Soranno's Gasco,* 874 F.2d at 1314; *Rizzo v. Dawson,* 778 F.2d at 532; *Rodriguez v. Kincheloe,* 763 F.Supp. 463, 472 (E.D.Wash.1991), *aff'd,* 967 F.2d 590 (9th Cir. 1992), *cert. denied,* 507 U.S. 933, 113 S.Ct. 1318, 122 L.Ed.2d 704 (1993). After such a showing, the burden shifts to the prison official to show that he would have engaged in the same conduct even if the inmate had not pursued any legal action. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Soranno's Gasco,* 874 F.2d at 1314.

The sole reason advanced by plaintiff to show that retaliation was the substantial or motivating factor behind the filing of the disciplinary charges against her is that the disciplinary charges were allegedly filed **after** she submitted her grievances. (Plaintiff Decl., pages 42–43; Plaintiff's Opp., page

---

4. The Ninth Circuit has held that pre–1995 retaliation cases should be applied in light of the more deferential attitude of *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and that the federal courts should be circumspect when asked to interfere in the operation of state prisons. *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir.1995).

4; Plaintiff's Exh. 7). Timing can, of course, be considered as circumstantial evidence of retaliatory intent. *Soranno's Gasco,* 874 F.2d at 1316; *Pratt,* 65 F.3d at 808. Here, the plaintiff concedes, however, that defendant Gonzalez may have prepared the disciplinary charge on December 26, 1993, and defendant Rodriguez avers that the disciplinary charge was prepared on December 26, 1993—**before** plaintiff filed her grievances. (Plaintiff Decl., page 42; Rodriguez Decl., ¶ 3).

The defendants assert that the plaintiff's disruptive actions at the Christmas party were the substantial and motivating factor behind the filing of the disciplinary charge against her. The declarations of defendants Dornan, Gonzalez, and Rodriguez support this assertion, showing that during the course of her visit, plaintiff became "disruptive and confrontational with other inmates," and defendant Gonzalez received several complaints regarding plaintiff's conduct. (MSJ, Exh. 7, Declaration of J.V. Gonzalez ("Gonzalez Decl."), ¶ 3). Similarly, "[s]everal" inmates approached [defendant Dornan] regarding plaintiff's continued behavior, specifically that "she was vocalizing anger in a threatening manner and that she wanted the program discontinued." (MSJ, Exh. 6, Declaration of D. Dornan ("Dornan Decl."), ¶ 4). Defendant Rodriguez also "was contacted by 15–20 inmates" who wanted to discuss plaintiff's disruption of the Christmas party. (Rodriguez Decl., ¶ 4; MSJ, Exhs. 9, 10). In fact, plaintiff concedes that at least two inmates complained about her behavior. (Plaintiff Decl., pages 34–35).

Disruptive behavior in a prison waiting room, which is operating at capacity,[5] is a legitimate penological concern and, indeed, a violation of prison regulations. Cal.Code Regs. tit. 15, § 3004(b). Thus, the filing of disciplinary charges against plaintiff advanced a legitimate penological goal: it prevented disruption. As defendant Rodriguez states, "[if] even one inmate becomes disruptive and attempts to cause a problem the disturbance that can result in this environment is extremely high". (Rodriguez Decl., ¶ 8; *see also* Dornan Decl., ¶ 5). Thus, the

defendants have shown that plaintiff's behavior was the cause for the filing of the disciplinary charges against plaintiff, and the plaintiff has not satisfied her burden of showing that retaliation was the substantial and motivating factor behind defendants' conduct.

## IV

 The plaintiff further claims that defendants Costello, Huyler, Lee, and Laudeman violated her due process rights during the prison disciplinary hearing and when they denied her rights to a conjugal visit while the disciplinary charges were pending. Liberty interests protected by the due clause of the Fourteenth Amendment arise from two sources: the due process clause itself and the laws of the state. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983); *Meachum v. Fano,* 427 U.S. 215, 223–27, 96 S.Ct. 2532, 2537–40, 49 L.Ed.2d 451 (1976). The due process clause does not protect every change in the conditions of confinement having a substantial impact on an inmate or any state action solely because it was imposed for a punitive reason. *Id.,* 427 U.S. at 224, 96 S.Ct. at 2538; *Sandin v. Conner,* —— U.S. at ——, 115 S.Ct. at 2299. State created "liberty interests ... protected by the Due Process Clause ... will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* —— U.S. at ——, 115 S.Ct. at 2300 (citations omitted). If a liberty interest is implicated, whether found in the Constitution or state-created, the prisoner must receive minimum due process prior to deprivation of that interest.

 Let us first consider plaintiff's claim that she did not receive procedural due process at the disciplinary hearing, and the subsequent rehearing. The plaintiff was charged with violation of Cal.Code Regs. tit.

5. Rodriguez Decl., ¶ 8.

15, § 3004,[6] identified as a Division "D" offense in the written notice of the charge. (MSJ, Exh. 8). A guilty finding on a Division "D" offense exposes the inmate to potential credit forfeiture of 61–90 days. Cal.Code Regs. tit. 15, § 3323(f). Because the potential penalty for plaintiff's charged offense could have affected the term of her sentence, she was entitled to minimum due process prior to imposition of any such penalty. *Id.*; *see also* Cal.Code Regs. tit. 15, §§ 3043, 3043.3 (credit earning and credit forfeiture).

However, before analyzing plaintiff's assertions regarding the alleged deficiencies in the hearings, we must consider the effect of plaintiff's successful administrative appeal of the disciplinary finding. By letter dated September 19, 1994, defendant Warden Poole granted plaintiff's appeal of the guilty finding, explaining that based on the "elapsed time since the alleged rules violation and the procedural errors in the hearing process to date," and the disciplinary finding was dismissed. (MSJ, Exh. 14). It is undisputed that plaintiff neither served a disciplinary sentence nor suffered any loss of privileges or credits prior to dismissal of the charges and guilty finding.

■■■■ Where a procedural error has been corrected in the administrative process, as it was here, there has been no compensable due process violation. The administrative appeal is considered part of the process afforded, and any error in the process can be corrected during that appeals process without necessarily subjecting prison officials to liability for procedural violations at lower levels. *See Wycoff v. Nichols,* 94 F.3d 1187, 1189 (8th Cir.1996) (rehearing and reversal cured alleged due process violation); *Morissette v. Peters,* 45 F.3d 1119, 1122 (7th Cir.1995) ("no denial of due process if the error the inmate complains of is corrected in the administrative appeal process"); *Young v. Hoffman,* 970 F.2d 1154, 1156 (2d Cir.1992) ("possibility of cure through the administrative appeals process will encourage prison administrators to correct errors"), *cert. denied,* 510 U.S. 837, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993). Fur-

ther, there can be no due process violation where the inmate, as here, was not subject to any discipline or loss of credits. *Young,* 970 F.2d 1154; *Allen v. City and County of Honolulu,* 816 F.Supp. 1501, 1511 (D.Ha. 1993), *aff'd,* 39 F.3d 936 (9th Cir.1994). Because the disciplinary action was dismissed on administrative appeal and plaintiff was not subject to any discipline or loss of credits, any procedural defects in the disciplinary hearing are not compensable. It is, therefore, not necessary to analyze the process provided to plaintiff.

■■■■ Regarding plaintiff's claim of loss of a conjugal visit, it is clear that an inmate has no due process right under the Fourteenth Amendment to the Constitution to unrestricted visitations. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir.1996); *Barnett v. Centoni,* 31 F.3d 813, 817 (9th Cir.1994); *Toussaint v. McCarthy,* 801 F.2d 1080, 1113–14 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Any due process right plaintiff has must, thus, be a state-created liberty interest. Since *Sandin,* a state created liberty interest exists only when the loss is an "atypical" sanction, which imposes "significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300.

In California, state regulations provide that prison officials can significantly restrict an inmate's visitations. *See* Cal.Code Regs. tit. 15, §§ 3170–3174. Given the highly regulated and restricted nature of prison visitations, the loss of one conjugal visit can hardly be considered the type of "atypical" and "significant" restriction which implicates a protected liberty interest. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300; *see also Kentucky,* 490 U.S. at 464, 109 S.Ct. at 1911 ("overall effect of the [visitation] regulation is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions"). The plaintiff, thus,

---

**6.** Section 3004 provides, in relevant part: "Inmates ... will not openly display disrespect or contempt for others in any manner intended to

or reasonably likely to disrupt orderly operations within the institution or to incite or provoke violence."

did not have a protected liberty interest in her cancelled conjugal visit.[7]

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting the Report and Recommendation; (2) dismissing the Complaint and action against defendant Doris Frey for lack of subject matter jurisdiction and with prejudice due to witness immunity, and directing that Judgment be entered accordingly; and (3) granting summary judgment to all other defendants, and directing that Judgment be entered accordingly.

---

**7.** In fact, plaintiff's application for the conjugal visit, which she signed, provides that "she understand[s] and agree[s] ... that receipt of a serious rules violation during the waiting period will cancel any scheduled visit pending." (Plaintiff's Exh. 28).